ABELE, J.
{¶ 1} This is an appeal from a Hocking County Common Pleas Court judgment of conviction and sentence. The trial court found Daryl Wheatley, defendant below and appellant herein, guilty of five offenses: (1) endangering children, in violation of R.C. 2912.22(B)(6); (2) having weapons while under disability, in violation of R.C. 2923.13(A)(4) ; (3) illegal cultivation of marijuana, in violation of R.C. 2925.04(A) ; (4) possessing criminal tools, in violation of R.C. 2923.24(A) ; and (5) receiving stolen property, in violation of R.C. 2913.51(A). The trial court sentenced appellant to serve five years of community control. Appellant assigns the following errors for review:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED BY EXPRESSING THE POTENTIAL SENTENCE FOR A COMMUNITY CONTROL VIOLATION AS A PACKAGE, RATHER THAN EXPRESSING A POTENTIAL SENTENCE FOR EACH SEPARATE, INDIVIDUAL OFFENSE."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED BY FINDING MR. WHEATLEY GUILTY ON COUNT II-WEAPONS UNDER DISABILITY, AND BY OVERRULING MR. WHEATLEY'S MOTION TO DISMISS, BASED ON THE UNCONSTITUTIONALITY OF R.C. 2923.1[3](A)(4)."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED BY FAILING TO MERGE COUNT III: ILLEGAL CULTIVATION OF MARIJUANA, *583 WITH COUNT IV: POSSESSING CRIMINAL TOOLS."
{¶ 2} After a Hocking County grand jury returned an indictment that charged appellant with five offenses, appellant entered a not guilty plea. He later filed a motion to dismiss the possessing a weapon while under a disability count.[1] Appellant argued that R.C. 2923.13(A)(4) is unconstitutional because it deprives him of his fundamental right to possess a firearm without notice and an opportunity to be heard. Appellant claimed that before the state may charge an individual under R.C. 2923.13(A)(4), the individual must receive notice and an opportunity to be heard concerning whether the person is drug dependent or in danger of drug dependence.
{¶ 3} The trial court overruled appellant's motion to dismiss and appellant subsequently agreed to enter a no contest plea to the five counts of the indictment.[2] The trial court later sentenced appellant to serve five years of community control. This appeal followed.
I
{¶ 4} For ease of discussion, we first address appellant's second assignment of error wherein appellant asserts that the trial court erred by overruling his motion to dismiss the weapons under disability count. In particular, appellant contends that R.C. 2923.13(A)(4) is unconstitutional because, appellant reasons, the statute violates his procedural due process rights and his constitutional right to bear arms. Appellant argues that (1) due process mandates that the state provide him with notice and a hearing regarding the drug-dependence issue before the state can criminalize his possession of a weapon under R.C. 2923.13(A)(4), and (2) R.C. 2923.13(A)(4) violates his constitutional right to bear arms.[3]
A
STANDARD OF REVIEW
{¶ 5} Generally, appellate courts conduct a de novo review of a trial court's decision concerning a defendant's motion to dismiss all or part of an indictment based upon a constitutional challenge to the statute under which the defendant stands indicted. State v. Mason , 2016-Ohio-8400, ---N.E.3d ----, ¶ 17, appeal allowed, 149 Ohio St.3d 1462, 2017-Ohio-5699, 77 N.E.3d 987 (reviewing de novo constitutional challenge to death-penalty statute); State v. Fisher , 4th Dist. Ross No. 16CA3553, 2017-Ohio-7260, 2017 WL 3585616, ¶ 8 ("we use a de novo standard of review to assess errors based upon violations of constitutional law"); accord Crutchfield Corp. v. Testa , 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900, ¶ 16 (stating that constitutionality of a statute is a legal question, which appellate court reviews de novo); see *584 State v. Kirk , 8th Dist. Cuyahoga No. 104866, 2016-Ohio-8296, 2016 WL 7496605, ¶ 4 (stating that courts review de novo trial court decision regarding motion to dismiss indictment); State v. Anderson , 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20 ("Appellate courts apply a de novo standard of review when reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy."); State v. Workman , 4th Dist. Athens No. 14CA25, 2015-Ohio-4483, 2015 WL 6549290, ¶ 9. Accordingly, an appellate court does not defer to a trial court's decision, but instead independently determines whether the trial court's decision is legally correct. Workman at ¶ 9.
B
CONSTITUTIONAL INTERPRETATION OF STATUTES
{¶ 6} The statutes enacted by the General Assembly are entitled to a "strong presumption of constitutionality." State v. Romage , 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7 ; accord State v. Noling , 149 Ohio St.3d 327, 2016-Ohio-8252, 75 N.E.3d 141, ¶ 9 ; R.C. 1.47. Thus, "if at all possible, statutes must be construed in conformity with the Ohio and the United States Constitutions." State v. Collier , 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). "To find a statute unconstitutional, we must determine 'beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " Noling at ¶ 10, quoting State ex rel. Dickman v. Defenbacher , 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus; State v. Fisher , 4th Dist. Ross No. 16CA3553, 2017-Ohio-7260, 2017 WL 3585616, ¶¶ 8-9.
{¶ 7} A statute may be challenged on constitutional grounds in two ways: (1) that the statute is unconstitutional on its face; or (2) that it is unconstitutional as applied to the facts of the case. State v. Lowe , 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17, citing United States v. Eichman , 496 U.S. 310, 312, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990) ; Harrold v. Collier , 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. A successful facial challenge requires the party challenging the statute to demonstrate that there is no set of facts under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications. Romage at ¶ 7, citing Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership , 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 13 ("for a statute to be facially unconstitutional, it must be unconstitutional in all applications"); Harrold at ¶ 37 ; accord United States v. Salerno , 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (explaining that law facially unconstitutional if "no set of circumstances exists under which the [law] would be valid"). "[A] facial challenge permits a statute to be attacked for its effect on conduct other than the conduct for which the defendant is charged." State v. White , 2013-Ohio-51, 988 N.E.2d 595 (6th Dist.), ¶ 151, citing Brockett v. Spokane Arcades, Inc. , 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) ; accord State v. Colon , 2017-Ohio-8478, ---N.E.3d ----, ¶ 12.
{¶ 8} "In an as-applied challenge, the challenger 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.' " Lowe at ¶ 17, quoting Ada v. Guam Soc. of Obstetricians & Gynecologists , 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting); accord State v. Carrick , 131 Ohio St.3d 340, 2012-Ohio-608, 965 N.E.2d 264, ¶ 16. "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it *585 utterly inoperative." Yajnik v. Akron Dept. of Health, Hous. Div. , 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14, quoting Ada , 506 U.S. 1011, 113 S.Ct. 633 (Scalia, J., dissenting); accord Ruther v. Kaiser , 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 9. "Thus, an as-applied challenge focuses on the particular application of the statute." State v. Carrick , 131 Ohio St.3d 340, 2012-Ohio-608, 965 N.E.2d 264, ¶ 16. When a party challenges a statute as applied, the party "bears the burden of presenting clear and convincing evidence of a presently existing state of facts that make the statute unconstitutional and void when applied to those facts." Harrold at ¶ 38.
{¶ 9} In the case sub judice, appellant does not specifically identify whether he presents a facial challenge or an as-applied challenge. Nonetheless, as we detail below, we do not believe that appellant has established that R.C. 2923.13(A)(4) violates either his right to due process of law or his right to bear arms, or that the statute is unconstitutional in all circumstances.
C
R.C. 2923.13(A)(4)
{¶ 10} The challenged statute, R.C. 2923.13(A)(4), provides:
(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * * *
(4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic.
{¶ 11} A " '[d]rug dependent person' means any person who, by reason of the use of any drug of abuse, is physically, psychologically, or physically and psychologically dependent upon the use of such drug, to the detriment of the person's health or welfare." R.C. 3719.011(B). A " '[p]erson in danger of becoming a drug dependent person' means any person who, by reason of the person's habitual or incontinent use of any drug of abuse, is in imminent danger of becoming a drug dependent person." R.C. 3719.011(C).
D
RIGHT TO BEAR ARMS
{¶ 12} " 'The right to keep and bear arms is a fundamental right enshrined in federal and state constitutional law.' "[4] State v. Lerch , 4th Dist. Washington No. 15CA39, 2016-Ohio-2791, 2016 WL 1734991, ¶ 17, quoting State v. Robinson , 2015-Ohio-4649, 48 N.E.3d 1030, ¶ 11 (12th Dist.) ; McDonald v. Chicago , 561 U.S. 742, 750, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (extending the Second Amendment right to bear arms to the states); District of Columbia v. Heller , 554 U.S. 570, 659, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) ; accord Caetano v. Massachusetts , --- U.S. ----, 136 S.Ct. 1027, 194 L.E.2d 99 (2016) ; Klein v. Leis , 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 7. In Heller , the court interpreted the Second Amendment to "guarantee the individual right to possess and carry weapons in case of confrontation." Id. at 592, 128 S.Ct. 2783. The Court further emphasized, however, that "the right secured by the Second Amendment is not unlimited." Id. at 626, 128 S.Ct. 2783 ;
*586 accord Klein at ¶ 7 (stating that "the right to bear arms is not absolute").[5] The Court stated, for example, that its decision did not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626, 128 S.Ct. 2783. The court additionally cautioned that "these presumptively lawful regulatory measures [serve] only as examples" and that this "list does not purport to be exhaustive." Id. at 627, 128 S.Ct. 2783, fn.26. Thus, the Second Amendment does not secure "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626, 128 S.Ct. 2783.
{¶ 13} Instead, the Second Amendment's "core protection" is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 634-635, 128 S.Ct. 2783. The Heller court explained that "the enshrinement of constitutional rights necessarily takes certain policy choices off the table," which "include[s] the absolute prohibition of handguns held and used for self-defense in the home." Id. at 636, 128 S.Ct. 2783. Consequently, as long as an individual "is not disqualified from the exercise of Second Amendment rights," a state may not prohibit the individual from possessing a weapon for use "in defense of hearth and home." Id. at 635, 128 S.Ct. 2783.
{¶ 14} Although Heller did not explore the full scope of the Second Amendment protections, subsequent federal court decisions have examined Heller and concluded that the Second Amendment does not, as a general matter, prohibit the government from criminalizing a non-law-abiding individual's possession of a weapon. These courts emphasize that the Second Amendment's core protection, as explained in Heller , "is the right of self-defense by ' "law-abiding, responsible citizens." ' " United States v. Carpio-Leon , 701 F.3d 974, 979 (4th Cir.2012), quoting United States v. Carter, 669 F.3d 411, 416 (4th Cir. 2012) (emphasis added), quoting Heller, 554 U.S. at 635, 128 S.Ct. 2783, and citing United States v. Moore, 666 F.3d 313, 319 (4th Cir.2012), quoting Heller, 554 U.S. at 635, 128 S.Ct. 2783 (holding that a defendant with prior felony and violent crime convictions "simply does not fall within the category of citizens to which the Heller court ascribed the Second Amendment protection of 'the right of law-abiding responsible citizens to use arms in defense of hearth and home' "); United States v. Masciandaro, 638 F.3d 458, 470 (4th Cir.2011), cert. denied, 565 U.S. 1058, 132 S.Ct. 756, 181 L.Ed.2d 482 (2011) (identifying the "fundamental," core right of the Second Amendment as self-defense in the home by a law-abiding citizen) (emphasis added). Accordingly, "the Second Amendment does not guarantee the right to possess for every purpose, to possess every type of weapon, to possess at every *587 place, or to possess by every person ." Carpio-Leon , 701 F.3d at 977 ; United States v. Chester, 628 F.3d 673, 676 (4th Cir.2010) ( "Significantly, Heller recognized that the right to keep and bear arms, like other Constitutional rights, is limited in scope and subject to some regulation"). Thus, "not every person has the right to possess a firearm." Carpio-Leon , 701 F.3d at 977 (concluding that federal statute prohibiting illegal alien from possessing firearm does not violate Second Amendment). Indeed, the Heller court clearly indicated that certain individuals may be "disqualified from the exercise of Second Amendment rights." 554 U.S. at 635, 128 S.Ct. 2783. As the court explained in United States v. Carter :
The weight of the right to keep and bear arms depends not only on the purpose for which it is exercised but also on relevant characteristics of the person invoking the right. Placed in the wrong hands, firearms present a grave threat to public safety, and for this reason, the Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous.
669 F.3d at 415 (citations omitted). Additionally,
"most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.' " United States v. Yancey, 621 F.3d 681, 684-85 (7th Cir.2010) (quoting United States v. Vongxay, 594 F.3d 1111, 1118 (9th Cir.2010) (citing Glenn Harlan Reynolds, A Critical Guide to the Second Amendment, 62 Tenn. L. Rev. 461, 480 (1995) ; Don B. Kates, Jr., The Second Amendment: A Dialogue, Law & Contemp. Probs., Winter 1986, at 143, 146) ). For example, felons "were excluded from the right to arms" because they were deemed unvirtuous. Reynolds, supra, at 480 ; see also David Yassky, The Second Amendment: Structure, History, and Constitutional Change, 99 Mich. L. Rev. 588, 626 (2000) ("The average citizen whom the Founders wished to see armed was a man of republican virtue").
Carpio-Leon , 701 F.3d at 979-980.
{¶ 15} However, "[t]he Heller Court's holding that defines the core right to bear arms by law-abiding, responsible citizens does not preclude some future determination that persons who commit some offenses might nonetheless remain in the protected class of 'law-abiding, responsible' persons." Id. at 981. Consequently, not every individual who commits a crime "automatically loses the protection of the Second Amendment." Id.
{¶ 16} The federal courts have developed a two-step framework for analyzing Second Amendment challenges to laws regulating weapons. The first step " 'asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood.' " Tyler v. Hillsdale Cty. Sheriff's Dept. , 837 F.3d 678, 685 (6th Cir. 2016), quoting United States v. Greeno , 679 F.3d 510, 518 (6th Cir. 2012) ; Carter , 669 F.3d at 416, quoting Chester , 628 F.3d at 680 ("First, we inquire whether the statute in question 'imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification.' "). If the challenged law does not burden conduct falling within the scope of the Second Amendment, as historically understood, "the activity is unprotected and the law is not subjected to further *588 constitutional scrutiny." Tyler , 837 F.3d at 685-686.
If, however, the historical evidence is inconclusive or suggests that the regulated activities-or * * * the regulated individuals-are not categorically unprotected, then we must ascertain the appropriate level of scrutiny and examine the "strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." [ Greeno , 679 F.3d at 518 ] (quoting Ezell v. City of Chicago , 651 F.3d 684, 703 (7th Cir. 2011). Thus, unless the conduct at issue is categorically unprotected, the government bears the burden of justifying the constitutionality of the law under a heightened form of scrutiny.
Tyler , 837 F.3d at 686.
{¶ 17} If the Second Amendment protects the conduct at issue, courts engage in an intermediate-scrutiny analysis to determine the constitutionality of the statute. Id. at 693. A weapons-statute ordinarily will survive an intermediate-scrutiny analysis if the statute is reasonably related to a significant, substantial, or important governmental interest.[6] Id. Intermediate scrutiny does not demand that the challenged law "be the least intrusive means of *589 achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question." Masciandaro , 638 F.3d at 474. Thus, " 'a perfect fit is not required.' " Tyler , 837 F.3d at 693 (6th Cir. 2016), quoting United States v. Chapman , 666 F.3d 220, 228 (4th Cir. 2012). See generally State v. Henderson, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268, 2012 WL 1029187, ¶ 52, citing Perry Ed. Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) ("[I]n applying the intermediate scrutiny standard to legislation that regulates the Second Amendment, such legislation (1) must be narrowly tailored to serve a significant government interest, and further, it (2) must leave open alternative means of exercising the right.").
{¶ 18} The federal courts have roundly rejected Second Amendment challenges to a federal statute that prohibits habitual drug users from possessing weapons. Carter , 669 F.3d at 416 (stating that "all courts that have addressed the constitutionality of § 922(g)(3) have upheld the statute"), citing United States v. Dugan , 657 F.3d 998 (9th Cir.2011) ; United States v. Yancey , 621 F.3d 681 (7th Cir.2010) ; United States v. Seay , 620 F.3d 919 (8th Cir.2010) ; United States v. Patterson , 431 F.3d 832 (5th Cir.2005) ; United States v. Richard , 350 Fed.Appx. 252 (10th Cir.2009). The statute prohibits an individual "who is an unlawful user of or addicted to any controlled substance" from possessing a firearm.[7] 18 U.S.C. Section 922(g)(3).
{¶ 19} In Yancey , the court reviewed 18 U.S.C. Section 922(g)(3) and determined that "Congress acted within constitutional bounds by prohibiting illegal drug users from firearm possession because it is substantially related to the important governmental interest in preventing violent crime." Id. at 687. The court observed that "Congress enacted the exclusions in § 922(g) to keep guns out of the hands of presumptively risky people." Id. at 683. The court concluded that habitual drug abusers are similar to the categorical exclusions of felons and the mentally ill that the Heller court approved. The court explained that "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." Id. at 685. The court additionally noted that "unlike those who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user * * * could regain his right to possess a firearm simply by ending his drug abuse. In that sense, the restriction in § 922(g)(3) is far *590 less onerous than those affecting felons and the mentally ill." Id. at 686-87 ; accord Carter , 669 F.3d at 419 ("By initially disarming unlawful drug users and addicts while subsequently restoring their rights when they cease abusing drugs, Congress tailored the prohibition to cover only the time period during which it deemed such persons to be dangerous."). The court continued: "[T]he gun ban extends only so long as [the defendant] abuses drugs. In that way, [the defendant] himself controls his right to possess a gun; the Second Amendment, however, does not require Congress to allow him to simultaneously choose both gun possession and drug abuse." Yancey, 621 F.3d at 687 ; accord Carter , 669 F.3d at 419 ("application of § 922(g)(3) tracks the ongoing choices of individuals either to remain drug users or to quit drug abuse"). See also United States v. Bena , 664 F.3d 1180, 1183 (8th Cir. 2011), quoting Seay , 620 F.3d at 925 (observing "that Congress sought to 'keep firearms out of the possession of drug abusers, a dangerous class of individuals,' and concluded that § 922(g)(3) was 'the type of "longstanding prohibition[ ] on the possession of firearms" that Heller declared presumptively lawful.' ").
{¶ 20} In the case sub judice, we do not believe that R.C. 2923.13(A)(4) violates appellant's Second Amendment right to bear arms. First, appellant's drug use places him outside of the law-abiding-citizen category identified in Heller.[8] Thus, because appellant's drug use shows that he is not a law-abiding-citizen, under the Heller rationale, appellant is not entitled to possess a firearm "in defense of hearth and home."
{¶ 21} Second, assuming, arguendo, that possession of a weapon by a drug-dependent individual falls within the Second Amendment's protections, as historically understood, we agree that the statute serves a substantial state interest and that the law is reasonably or narrowly tailored to meet that interest. No one seriously disputes that the state possesses a strong interest in maintaining public safety and preventing gun violence. Tyler , 837 F.3d at 693 (stating that "protecting the community from crime" is a "compelling" governmental interest); accord United States v. Salerno , 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("There is no doubt that preventing danger to the community is a legitimate regulatory goal."). Furthermore, at least one federal court has recognized the link between drugs and gun violence. Yancey , 621 F.3d at 685-686. Additionally, courts have recognized that drug-dependent individuals "are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." Id. at 685 ; accord United States v. Dugan , 657 F.3d 998, 999 (9th Cir. 2011). R.C. 2923.13(A)(4) thus helps further the state's interest by keeping weapons out of the hands of those involved with drugs. By preventing drug-dependent individuals or individuals in danger of becoming drug-dependent from possessing a weapon, the statute seeks to prevent gun violence and preserve public safety. State v. White , 3rd Dist. Marion No. 9-96-66, 1997 WL 180307, *3-4 (stating that "[t]he ultimate objective of [ R.C. 2923.13(A)(4) ] appears to be the protection of public safety by reducing the presence of firearms in violent activities, such as the uncontrolled shootings associated with drug trafficking and drug-related crimes").
{¶ 22} Appellant's claim that R.C. 2923.13(A)(4) imposes a lifetime ban upon *591 drug addicts is meritless. The statutory definitions do not encompass recovering drug addicts who are not using drugs. Instead, the definitions reveal that a drug-dependent individual or a person in danger of becoming drug-dependent must currently use drugs or do so on a habitual basis. The definitions do not cover individuals who formerly abused drugs and have completely recovered from their addiction.
{¶ 23} We also note that both before and after Heller , several Ohio appellate courts have upheld the constitutionality of laws regulating firearms. State v. Shover , 2014-Ohio-373, 8 N.E.3d 358 (9th Dist.) (upholding as constitutional statute regarding improper handling of firearm in motor vehicle); State v. Beyer , 5th Dist. Licking No. 12-CA-27, 2012-Ohio-4578, 2012 WL 4713905 (determining that defendant did not possess Second Amendment right to use weapon while intoxicated); State v. Henderson, 11th Dist. Portage No.2010-P-0046, 2012-Ohio-1268, 2012 WL 1029187 (concluding that improper handling of a firearm in a motor vehicle conviction did not violate right to bear arms); State v. Morris , 11th Dist. Trumbull No. 2008-T-0110, 2009-Ohio-6033, 2009 WL 3807159, ¶ 84-85 (upholding constitutionality of R.C. 2923.13(A)(3) ); State v. White , 3d Dist. Marion No. 9-96-66, 1997 WL 180307, at *3 (Mar. 28, 1997) (upholding constitutionality of R.C. 2923.13(A)(4) and stating that "[e]nsuring that firearms are kept out of the hands of drug abusers, or potential drug abusers, is a legitimate method of forwarding public safety and attacking drug trafficking problems."); State v. Winkelman , 2 Ohio App.3d 465, 442 N.E.2d 811 (12th Dist.1981), overruled on other grounds, State v. Frederick , 12th Dist. Butler Nos. CA88-07-111 and CA88-07-118, 1989 WL 80493, at *2-4 (July 17, 1989) (declaring R.C. 2923.13(A)(2) constitutional).
{¶ 24} In State v. White , for instance, the court determined that the same statute involved in the case at bar- R.C. 2923.13(A)(4) -is constitutional. While we recognize that White predated Heller and thus did not apply the same legal standards espoused in Heller , but instead, applied more of a rational-basis analysis, we believe that the White court's reasons supporting the constitutionality of the law remain valid and appear consistent with Heller . The White court recognized, for example, that "the legislative policy is to allow firearm access to responsible [or law-abiding] citizens in responsible circumstances, while limiting such access to persons and situations wherein substantial harm to the public's safety and welfare will likely result." Id. at *3. Likewise, the Heller court recognized the right of law-abiding citizens to possess weapons, and noted that certain categories of individuals, such as felons and the mentally ill, may be excluded from the Second Amendment's protections. The White court observed that R.C. 2923.13(A)(4) manifests the General Assembly's recognition that "firearms in the possession of those who are drug dependent, or in danger of becoming such, [creates] a circumstance where substantial harm could result to the public." Id.
{¶ 25} Moreover, the White court pointed out, like the federal courts several years later, that "the limitation on the right to possess a firearm is only temporary and for a reason consistent with the state's interests." Id. The court explained: " '[t]he disability is stated in the presence tense. In other words, the disability only exists during the time in which the person is [drug dependent or in danger of drug dependency].' " Id. , quoting Rothacker v. Lakewood , 30 Ohio App.3d 33, 34, 505 N.E.2d 1019 (8th Dist. 1986). "Thus, the firearms proscription ends once the disability *592 is removed, such as when treatment has been sought and the person is a reformed drug abuser." Id. at *4.
{¶ 26} Consequently, based upon all of the foregoing reasons, we disagree with appellant that R.C. 2923.13(A)(4) violates the Second Amendment either as applied to his situation or as applied in all circumstances.
E
DUE PROCESS
{¶ 27} Appellant next argues that R.C. 2923.13(A)(4) violates the Due Process Clause. He asserts that the statute deprives him of his constitutional right to possess a weapon without affording him notice and a hearing. Appellant claims that before the state can criminalize his possession of a weapon, it must afford him notice and an opportunity to be heard regarding the drug-dependency issue. Appellant proposes that he should be entitled to receive "a 'notice of weapons disability' by virtue of his drug dependence, with that notice providing notice of the right to appeal (an appropriate post-deprivation remedy). If that individual subsequently possesses weapons, he could then be charged with weapons under disability." He essentially alleges that he is entitled to a predetermination whether he is under a disability before the state may charge him with weapons under a disability. We do not agree with appellant.
{¶ 28} The Due Process Clause contained in the Fourteenth Amendment to the United States Constitution states: "No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *." The Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." The two clauses provide equivalent due process protections. State v. Aalim , 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15 ; State v. Hand , 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 11 ; Direct Plumbing Supply Co. v. Dayton , 138 Ohio St. 540, 544-545, 38 N.E.2d 70 (1941).
{¶ 29} "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge , 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). " '[D]ue process' has never been, and perhaps can never be, precisely defined." Lassiter v. Dept. of Social Servs. , 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.E.2d 640 (1981). Instead, due process is "a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." Aalim at ¶ 22, citing Walters v. Natl. Assn. of Radiation Survivors , 473 U.S. 305, 320, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness." California v. Trombetta , 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "The fundamental requirement[s] of due process [are notice and] the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " Eldridge , 424 U.S. at 333, 96 S.Ct. 893, quoting Armstrong v. Manzo , 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) ; accord Wilkinson v. Austin , 545 U.S. 209, 225-226, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (explaining that "notice of the factual basis leading to" the deprivation "and a fair opportunity for *593 rebuttal" "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations").
{¶ 30} Furthermore, in the criminal-law context, " '[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.' " Medina v. California , 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), quoting Dowling v. United States , 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990), and citing United States v. Lovasco , 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). Consequently, the United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly" in the criminal-law context. Medina , 505 U.S. at 443, 112 S.Ct. 2572. "The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order." Id.
{¶ 31} A procedural due process analysis begins by examining "whether there exists a liberty or property interest of which a person has been deprived." Swarthout v. Cooke , 562 U.S. 216, 219, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it." Kentucky Dept. of Corr. v. Thompson , 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) ; see Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding that adequate procedural protections are required only when the plaintiff has been deprived of a liberty or property interest). If the person has been deprived of a protected liberty or property interest, the question becomes "whether the procedures followed by the State were constitutionally sufficient." Swarthout , 562 U.S. at 219, 131 S.Ct. 859.
{¶ 32} In the case sub judice, assuming, arguendo, that appellant (as a drug-dependent individual or a person in danger of drug dependence) possesses a constitutionally protected liberty interest in possessing a firearm, we first observe that appellant does not cite any authority to support his proposition that an individual possesses a due process right to preindictment notice and a hearing regarding whether the individual's conduct falls within the meaning of a criminal statute. See United States v. Luedtke , 589 F.Supp.2d 1018, 1023 (E.D.Wis.2008) (rejecting constitutional due process argument when defendant did not provide any "authority for the proposition that counsel, a jury trial and/or proof beyond a reasonable doubt are always required before a person may be stripped of a constitutional right"). He instead asserts that these protections must apply given the fundamental nature of the right to bear arms. Again, however, appellant does not cite any authority indicating that criminal laws regulating fundamental rights require some sort of preindictment notice or hearing in order to comply with due process.
{¶ 33} Instead, in criminal cases, the due process requirements of notice and an opportunity to be heard essentially are encompassed within two fundamental concepts. "[T]he first essential of due process of law" is the accused's right to fair notice of the proscribed conduct. Connally v. Gen. Const. Co. , 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) ; accord Johnson v. United States , --- U.S. ----, 135 S.Ct. 2551, 2556-57, 192 L.Ed.2d 569 (2015) (explaining that Due Process Clause prohibits state from "taking away someone's life, liberty, or property under a *594 criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement"); Rogers v. Tennessee , 532 U.S. 451, 459, 121 S.Ct. 1693, 1698, 149 L.Ed.2d 697 (2001) (defining "core due process concepts" as "notice, foreseeability, and, in particular, the right to fair warning"); City of Chicago v. Morales , 527 U.S. 41, 56, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67 (1999) (stating that "the purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law"); Rose v. Locke , 423 U.S. 48, 49-50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) ("All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden."); Parker v. Levy , 417 U.S. 733, 756-57, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974), quoting United States v. National Dairy Products Corp. , 372 U.S. 29, 32-33, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963) (" 'criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.' "); Grayned v. Rockford , 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"); Bouie v. City of Columbia , 378 U.S. 347, 351, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964), quoting United States v. Harriss , 347 U.S. 612, 617, 74 S.Ct. 808, 811-812, 98 L.Ed. 989 (1954) (" 'The * * * principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.' "); Screws v. United States , 325 U.S. 91, 103-04, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945) (explaining that due process requires statutes to be written so as to provide individual with "fair warning that his conduct is within [statute's] prohibition"); McBoyle v. United States , 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931) (stating that "[a]lthough it is not likely a criminal will carefully consider the text of the law before" committing a crime "it is reasonable that a fair warning should be given * * * in language that the common world will understand, of what the law intends to do if a certain line is passed"); Connally v. Gen. Const. Co. , 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) ("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."); State v. Elmore , 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 23 (2009) (stating that due process requires law to be written so that the "public" can "adequately inform itself * * * before acting"); State v. Tanner , 15 Ohio St.3d 1, 3, 472 N.E.2d 689 (1984), quoting Columbus v. Thompson , 25 Ohio St.2d 26, 30, 266 N.E.2d 571 (1971), quoting United States v. Capital Traction Co. , 34 App.D.C. 592 (1910), and citing Connally v. General Construction Co. , 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) ( " ' "[t]he crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue." ' ").
{¶ 34} The second essential component of due process in criminal proceedings is a fair hearing. Irvin v. Dowd , 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). "The failure to accord an accused a fair hearing violates even the minimal standards of due process." Id. Accordingly, " '[a] fair trial in a fair tribunal is a basic requirement of due process.' " Id. , quoting *595 In re Murchison , 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) ; accord State v. Liberatore , 69 Ohio St.2d 583, 589, 433 N.E.2d 561 (1982) ("every individual is entitled to a fair trial by an impartial jury").
The Constitution * * * defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause:
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."
Strickland v. Washington , 466 U.S. 668, 684-85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).
{¶ 35} In the case sub judice, appellant had fair notice of the proscribed conduct. We first point out that a statute's presence on the books constitutes fair warning of the prohibited conduct. Dobbert v. Florida , 432 U.S. 282, 297, 97 S.Ct. 2290, 2300, 53 L.Ed.2d 344 (1977) (stating that statute's "existence on the statute books provided fair warning"); Bryan v. United States , 524 U.S. 184, 193, 118 S.Ct. 1939, 1946, 141 L.Ed.2d 197 (1998) (stating that every citizen is presumed to know the law). Appellant thus is charged with knowing that possessing a weapon while being drug dependent or in danger of drug-dependence constitutes a crime. The revised code further defines "drug dependent" and "in danger of drug-dependence." Appellant thus is charged with knowing whether he is a drug dependent individual or a person in danger of drug-dependence. We note that appellant did not argue that the statute is so vague that it fails to provide adequate notice. However, even if he had, we previously determined that R.C. 2923.13 gives fair notice of the proscribed conduct. State v. Alexander , 4th Dist. Adams No. 12CA945, 2013-Ohio-1913, 2013 WL 1932934, ¶ 22-23 (" R.C. 2923.13(A)(4) provides sufficient notice for a person of ordinary intelligence to understand what he or she is prohibited from doing under the law" and "the definitions in R.C. 3719.011 identify an objective standard for a person of ordinary intelligence to determine whether he falls within the classification of drug dependent person or in danger of becoming a drug dependent person.").
{¶ 36} Furthermore, the United States Supreme Court has recognized "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." Cheek v. United States , 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ; accord State v. Taylor , 4th Dist. Meigs No. 377, 1987 WL 16084 (Aug. 27, 1987), *7, quoting 1 Wharton's Criminal Law, Sec. 77, 374, 376 (" 'the principle that ignorance of the law is no excuse is born not of logic but of necessity, since otherwise a premium would be placed upon ignorance and any defendant could free himself from the grasp of the law merely by pleading ignorance.' "). The common-law rule that every person is presumed to know the law "has been applied by the Court in numerous cases construing criminal statutes." Cheek , 498 U.S. at 199, 111 S.Ct. 604 (citations omitted). The rule "results from the extreme difficulty of ascertaining what is, bona fide, the interpretation of the party; and the extreme danger of allowing such excuses to be set up for illegal acts, to the detriment of the *596 public." Barlow v. United States , 32 U.S. 404, 7 Pet. 404, 411, 8 L.Ed. 728 (1833). For "there would be perpetual temptations to violations of the law, if men were not put upon extreme vigilance to avoid them." Id.
{¶ 37} Additionally, the Ohio Supreme Court has rejected the argument that knowledge of a disability is a required element under R.C. 2923.13. State v. Johnson , 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 43 ("the offense of having weapons while under disability as defined by R.C. 2923.13(A)(3)" requires state "to prove knowing possession but" need not "prove a culpable mental state for the element that a defendant is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse"); accord State v. Carney , 1st Dist. Hamilton No. C-160660, 2017-Ohio-8585, 2017 WL 5517708, ¶¶ 4-8 (rejecting argument that classification of disability under R.C. 2923.13(A)(3) requires same "procedural or substantive safeguards that precede a valid adult criminal conviction"); State v. Jones , 8th Dist. Cuyahoga No. 90903, 2009-Ohio-3371, 2009 WL 1965449, ¶ 6 (rejecting defendant's argument that weapons-disability conviction unconstitutional when he did not have notice of disability because "actual knowledge of the disability is not required"); State v. Earls , 1st Dist. Hamilton No. C-040141, 2004-Ohio-6432, 2004 WL 2757197, ¶¶ 9-10 (finding "no constitutional violation when defendant claimed that he did not receive notice that he was under a disability" and that criminal conduct "should alert a defendant to potential restrictions upon his normal activity"); State v. Russell , 4th Dist. Athens No. 97 CA 37, 1998 WL 357546 (June 30, 1998), *24 (stating that weapons-disability "statute does not require the state to prove that the defendant had knowledge of his underlying disability"); State v. White, 3rd Dist. Marion No. 9-96-66, 1997 WL 180307, *5 ("the language of R.C. 2923.13(A) shows that the constitutionally required notice pertains only to one's knowledge of possession of the firearm" and "knowledge of drug dependence, or risk of becoming drug dependent, is not a relevant factor within the terms of the statute"); State v. Thurairatnam , 2nd Dist. Darke No. 1091, 1984 WL 4841 (Apr. 10, 1984), *1 (rejecting defendant's assertion that weapons-disability conviction violated due process rights when he did not have prior notice of disability); see Bryan v. United States , 524 U.S. 184, 193, 118 S.Ct. 1939, 1946, 141 L.Ed.2d 197 (1998) ("the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense" and not that defendant knew conduct unlawful); United States v. Allen , United States District Court of Idaho No. 1:15-CR-00275-BLW, 2016 WL 4146074, *4-5 (Aug. 3, 2016), quoting Cheek v. United States , 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (rejecting argument that due process required defendant to receive notice that mental commitment disqualified him from possessing weapon under federal statute and further pointing out that " 'ignorance of the law or a mistake of law is no defense to criminal prosecution' "); United States v. Hancock , 231 F.3d 557, 561 (9th Cir.2000) (rejecting argument that conviction under federal statute prohibiting individuals convicted of domestic violence from possessing weapons violates due process even though defendant "did not learn of the statute until he was charged with violating it"); United States v. Beavers , 206 F.3d 706, 710 (6th Cir.2000) (concluding that defendant's "conviction on a domestic violence offense sufficiently placed him on notice that the government might regulate his ability to own or possess a firearm" and that conviction under *597 federal firearms statute did "not require the government to prove that the defendant had actual knowledge that his possession of a firearm was illegal").
{¶ 38} We therefore reject appellant's argument that due process entitled him to preindictment notice that he was under a weapons-disability.
{¶ 39} Furthermore, appellant entered a no contest plea and has not raised any argument concerning his right to a fair trial. Thus, the case at bar does not implicate this due process concern. Additionally, had appellant objected to his classification as a drug dependent individual or a person in danger of becoming drug-dependent, he could have chosen to submit the matter to the jury. By entering a no-contest plea, appellant waived his right to require the state to prove this element beyond a reasonable doubt and "cannot now validly complain the trial court erred in not dismissing the indictment" on this basis. State v. Bushong , 5th Dist. Guernsey No. 02CA12, 2003-Ohio-2296, 2003 WL 21027266, ¶ 42.
{¶ 40} To the extent due process requires the state to afford appellant a hearing before the state can criminalize his possession of a weapon, we point out that R.C. 2923.14 provides a mechanism for appellant to seek relief from a disability. R.C. 2923.14(A)(1) states: "Except as otherwise provided in division (A)(2) of this section, any person who is prohibited from acquiring, having, carrying, or using firearms may apply to the court of common pleas in the county in which the person resides for relief from such prohibition." Thus, a person who is drug-dependent or in danger of drug dependence may seek relief under R.C. 2923.14(A), which ostensibly would prevent the state from charging the person with a crime under R.C. 2923.13(A)(4). See generally State v. Robinson , 2015-Ohio-4649, 48 N.E.3d 1030 (12th Dist.), ¶ 16.
{¶ 41} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
II
{¶ 42} In his first assignment of error, appellant asserts that the trial court erred as a matter of law by failing to impose separate sentences for each offense. Appellant contends that the trial court incorrectly imposed a collective five-year community control sentence rather than an individual sentence for each offense.
{¶ 43} The state agrees that the trial court improperly imposed a collective sentence and that we should remand the matter to the trial court for resentencing.
{¶ 44} We recently held that "a trial court must separately dispose of each count for which a defendant has been convicted, including specific community control terms for each separate count. In other words, a court may not impose one, lump sum community control sentence instead of imposing a specific community control sentence for each count." State v. Powell , 4th Dist. Athens No. 14CA31, 2017-Ohio-1068, 2017 WL 1103572, ¶ 18, citing State v. Williams , 3rd Dist. Hancock No. 5-10-02, 2011-Ohio-995, 2011 WL 775909.
{¶ 45} Additionally, in State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 9, the Ohio Supreme Court held that "under Ohio's sentencing statutes, a judge lacks the authority to consider multiple offenses as a group and to impose only an omnibus sentence for a group of offenses." Furthermore,
[a]lthough imposition of concurrent sentences in Ohio may appear to involve a "lump" sentence approach, the opposite *598 is actually true. Instead of considering multiple offenses as a whole and imposing one, overarching sentence to encompass the entirety of the offenses as in the federal sentencing regime, a judge sentencing a defendant pursuant to Ohio law must consider each offense individually and impose a separate sentence for each offense. See R.C. 2929.11 through 2929.19.[2] Only after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively.
Saxon at ¶ 9 (citations omitted).
{¶ 46} Based upon the foregoing well-established authority, we agree with appellant and the state that the trial court incorrectly imposed a collective sentence. Accordingly, we sustain appellant's first assignment of error and remand the matter to the trial court for resentencing.[9]
III
{¶ 47} In his third assignment of error, appellant argues that the trial court erred by failing to merge the illegal cultivation of marijuana and the possessing criminal tools offenses.
{¶ 48} Because we have decided to remand this matter to the trial court for resentencing, we believe a decision on this issue would be premature. The trial court imposed a collective sentence, and until the trial court correctly imposes separate sentences, we are unable to determine whether the trial court actually merged any of the offenses. We therefore decline to address appellant's third assignment of error at this juncture.
{¶ 49} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error. However, we reverse the trial court's decision to the extent that the court imposed a collective sentence for the offenses of which appellant was found guilty and we remand this matter for the limited purpose of resentencing.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED
*599 FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
Harsha, J. & McFarland, J.: Concur in Judgment & Opinion

R.C. 2923.13(A)(4) states: "Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * * [t]he person is drug dependent, in danger of drug dependence, or a chronic alcoholic."

We point out that although the trial court's judgment of conviction and sentence indicates that appellant "pled guilty," the record shows that appellant entered a no contest plea.

We point out that, except for the Second Amendment, appellant does not indicate whether he is relying upon federal or state constitutional law-or both. Nevertheless, because the Ohio Supreme Court generally interprets the Ohio Constitution as being coextensive with the United States Constitution, appellant's failure to cite all of the applicable constitutional provisions does not affect our analysis. See State v. Anderson , 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 21-22.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."
Section 4, Article I of the Ohio Constitution states: "The people have the right to bear arms for their defense and security * * *."

Because appellant focuses his argument on the Second Amendment to the United States Constitution, as opposed to the Ohio Constitution's similar right-to-bear-arms provision, we do not dwell on the Ohio Supreme Court cases that discuss the right. We nevertheless note that in cases predating Heller , the court recognized that the right to keep and bear arms is not absolute under the Ohio Constitution. State v. Taniguchi , 74 Ohio St.3d 154, 157, 656 N.E.2d 1286 (1995) ("[i]t is basic hornbook law that the state under its police powers may impose restrictions on who may possess firearms."); Arnold v. Cleveland , 67 Ohio St.3d 35, 46, 616 N.E.2d 163 (1993) (determining that Ohio Constitution "confers upon the people of Ohio the fundamental right to bear arms" but "right is not absolute").

We observe that the Tyler court, and other federal courts discussing the Second Amendment right post-Heller, describes the intermediate-scrutiny analysis as requiring a "reasonable" relation between the governmental interest and the challenged law. Id. at 693. The "reasonable" language appears to have originated in Chester, 628 F.3d at 683. which cited Board of Trustees of State Univ. of New York v. Fox , 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), to support its use of the word "reasonable." Id. (stating that "the government must demonstrate under the intermediate scrutiny standard that there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." In Fox , a commercial-free-speech case, the United States Supreme Court stated:
In sum, while we have insisted that " 'the free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing * * * the harmless from the harmful,' " Shapero[ v. Kentucky Bar Ass'n ], 486 U.S.[ 466] at 478, 108 S.Ct. [1916], at 1924, [100 L.Ed.2d 475 (1988) ], quoting Zauderer [v. Office of Disciplinary Counsel of Supreme Court of Ohio , 471 U.S. 626] at 646, 105 S.Ct. 2265], at 2279, [85 L.Ed.2d 652 (1985) ], we have not gone so far as to impose upon them the burden of demonstrating that the distinguishment is 100% complete, or that the manner of restriction is absolutely the least severe that will achieve the desired end. What our decisions require is a " 'fit' between the legislature's ends and the means chosen to accomplish those ends," Posadas [de Puerto Rico Assocs. V. Tourism Co. Of Puerto Rico ], 478 U.S. [328], at 341, 106 S.Ct. [2968], at 2977[, 92 L.Ed.2d 266 (1986) ] -a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is "in proportion to the interest served," In re R.M.J. , supra, 455 U.S. [191], at 203, 102 S.Ct. [929], at 937[, 71 L.Ed.2d 64 (1982) ] ; that employs not necessarily the least restrictive means but, as we have put it in the other contexts discussed above, a means narrowly tailored to achieve the desired objective. Within those bounds we leave it to governmental decisionmakers to judge what manner of regulation may best be employed.
Fox , 492 U.S. at 480, 109 S.Ct. 3028.
The United States Supreme Court most recently expressed the intermediate-scrutiny analysis that applies to a content-neutral law regulating non-commercial speech to require the law to be "narrowly tailored to serve a significant governmental interest." Packingham v. North Carolina , ---U.S. ----, 137 S.Ct. 1730, 1736, 198 L.Ed.2d 273 (2017), quoting McCullen v. Coakley , 573 U.S. ----, 134 S.Ct. 2518, 2534, 189 L.Ed.2d 502 (2014) (internal quotation marks omitted). The Packingham court did not indicate that the fit need only be "reasonable," but instead, stated the "law must not 'burden substantially more speech than is necessary to further the government's legitimate interests.' " 137 S.Ct. at 1736, quoting McCullen .
Regardless of the terminology used, we believe that R.C. 2923.13(A)(4) survives an intermediate-scrutiny analysis.

An "unlawful user" means a person
who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year. * * * *
27 C.F.R. 478.11.

Appellant's no contest plea constituted an admission of the facts alleged in the indictment. Crim.R. 11(B)(2). By virtue of his plea, therefore, appellant admitted that he is a drug-dependent individual or a person in danger of becoming drug dependent.

We observe that some appellate courts have determined that a trial court order that imposes a collective sentence rather than individual sentences is not a final, appealable order. State v. Cousino , 8th Dist. Cuyahoga No. 102388, 2015-Ohio-3587, 2015 WL 5158966, ¶ 4 ; State v. Jones , 8th Dist. Cuyahoga No. 102314, 2015-Ohio-2409, 2015 WL 3822060, ¶ 8. These courts reason that a collective sentence that does not specifically dispose of each individual offense fails to constitute a final, appealable order in accordance with Crim.R. 32(C) and State v. Lester , 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142. In Lester , the Ohio Supreme Court held that "a judgment of conviction is a final order * * * when the judgment entry sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk."Id. at ¶ 14. Additionally, "a valid judgment of conviction requires a full resolution of any counts for which there were convictions." State v. Jackson , 151 Ohio St.3d 239, 2017-Ohio-7469, 87 N.E.3d 1227.
However, the Third District Court of Appeals noted that the Ohio Supreme Court remanded collective-sentence cases to it to rule upon the merits, even though the Third District had concluded that the collectively-imposed sentence did not constitute a final order. State v. South , 3rd Dist. Union No. 14-07-40, 2010-Ohio-983, 2010 WL 893681, ¶ 18.
Given the state of uncertainty and our recent Powell decision that considered the merits, we believe that the trial court's decision that imposed a collective sentence constitutes a final, appealable order. We note that the trial court's judgment of conviction attempted to entirely dispose of each count, but it did so in an incorrect manner. See generally State v. Pari , 9th Dist. Summit No. 28098, 2017-Ohio-4165, 2017 WL 2467099, ¶¶ 31-40 (considering sentencing-package argument even though state sought dismissal due to lack of final, appealable order).