[Cite as *State v. Smith*, 2018-Ohio-4297.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                         :

     Plaintiff-Appellee,                          :

                                                          No. 18AP-124

v.                                                          :       (C.P.C. No. 16CR-5543)

Phillip S. Smith,                                     :       (REGULAR CALENDAR)

     Defendant-Appellant.                        :

---

D E C I S I O N

Rendered on October 23, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Yeura R. Venters*, Public Defender, and *John J. Keeling*, for appellant. **Argued:** *Ian J. Jones.*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Phillip S. Smith, appeals from a January 18, 2018 judgment of the Franklin County Court of Common Pleas sentencing him to serve two years on community control following a "no contest" plea to a charge that he improperly handled a firearm in a motor vehicle. (Oct. 24, 2017 Plea Form.) In the trial court, Smith sought dismissal of the charge against him on the ground that both facially and as applied to him, R.C. 2923.16(B) violates the Second Amendment to the U.S. Constitution and Article I, Section 4 of the Ohio Constitution. Because Ohio law provides numerous legal avenues to effectively defend against the charge, and because a motor vehicle operating on public roads is not a home within the meaning of *District of Columbia v. Heller*, 554 U.S. 570 (2008), R.C. 2923.16(B) does not on its face or as applied to Smith violate any right to bear arms. Smith's assignment of error is overruled and his conviction is affirmed.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   On October 5, 2016, a Franklin County Grand Jury indicted Smith for one count of improper handling of a firearm in a motor vehicle, when on May 9, 2016, he had a loaded firearm in a motor vehicle located in such a place in the vehicle that it was accessible to him without leaving the vehicle.  (Oct. 5, 2016 Indictment at 1.)  Smith pled "not guilty" on October 21, 2016.  (Oct. 21, 2016 Plea Form.)

{¶ 3}   On April 10, 2017, Smith filed a motion to dismiss alleging that the statute under which he had been indicted, R.C. 2923.16(B), was unconstitutional on its face and as applied to him.  (Apr. 10, 2017 Mot. to Dismiss at 2.)  The State opposed the motion on April 28.  (Apr. 28, 2017 Memo. Contra.)  On May 31, the trial court held a hearing on Smith's motion.  (May 31, 2017 Hearing Tr., filed Oct. 11, 2017.)  During the hearing, only Smith testified.

{¶ 4}   Smith explained that he is an over-the-road truck driver who resides in Missouri. (May 31, 2017 Hearing Tr. at 5-6, 9.)  He testified in the course of his job he is on the road for long stretches of time and often sleeps in the sleeper area of his truck cab both as a matter of convenience and for economic reasons.  *Id.* at 6-7, 9, 13.  He said he considers the sleeper cab his home away from his family.  *Id.* at 6.  Due to the nature of the work, he has sometimes found it necessary to sleep or wait in the cab in dangerous areas and has previously been the victim of hijacking attempts.  *Id.* at 7-8.  He also related that prior to being charged in this case, he ran for public office in Missouri and had received threats against his life.  *Id.* at 14.  Because of these dangers, he stated that he had been in the habit of keeping a loaded handgun in the sleeper area of the truck on the bunk.  *Id.* at 9-10.  This area, he testified, was located behind the driver and passenger seats and was separated by a curtain.  *Id.* at 12.  He admitted he was stopped in May 2016 because someone called the police and alleged that he had pointed a gun at them from his truck.  *Id.* at 13.  He admitted, at the time of the stop, no state had issued a concealed carry permit to him.  *Id.* at 8.

{¶ 5}   Approximately one month following the hearing, the trial court issued a decision and entry in which it denied Smith's motion to dismiss.  (June 30, 2017 Decision & Entry.)  The trial court held that the right to bear arms for self-defense is subject to limitations.  *Id.* at 2-3.  It found that R.C. 2923.16, detailing how a firearm may be transported in a motor vehicle, is a permissible limitation that does not violate the

constitutions as applied to Smith, notwithstanding the fact that he often sleeps in his truck. *Id.* at 5-6.

{¶ 6}   Following the trial court's decision on his motion, Smith pled "no contest" to the indicted charge and was found guilty on October 24, 2017. (Oct. 24, 2017 Plea Form; Oct. 24, 2017 Plea Tr. at 13, filed Mar. 21, 2018.)  On January 18, 2018, the trial court sentenced Smith to two years of community control. (Jan. 18, 2018 Jgmt. Entry; Jan. 18, 2018 Sentencing Tr. at 7, filed Mar. 21, 2018.)

{¶ 7}   Smith now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 8}   Smith posits a single assignment of error for our review:

THE TRIAL COURT ERRED WHEN IT HELD THAT THE DEFENDANT HAD NO CONSTITUTIONAL RIGHT TO POSSESS A LOADED HANDGUN IN A TRACTOR, THAT ALSO SERVED AS HIS HOME, IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO DO SO UNDER THE SUPREME COURT PRONOUNCEMENTS IN *COLUMBIA V. HELLER*, 554 U.S. 570 * * * (2008) AND *MCDONALD V. CITY OF CHICAGO*, 561 U.S. 742 * * * (2010).

## III.  DISCUSSION

{¶ 9}   The Second Amendment to the U.S. Constitution provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

Historically, there is legal and academic disagreement about whether the Second Amendment to the U.S. Constitution recognizes an individual right to possess and carry arms beyond the proclaimed goal of guaranteeing the availability of a citizen militia for the protection of the free body politic. *See, e.g.*, *Heller* in passim; *United States v. Miller*, 307 U.S. 174, 176-83 (1939).  But the United States Supreme Court's five-member majority in *Heller* has held that the Second Amendment does protect the bearing of some firearms in defense of one's home and family. *Heller* at 628-29.  This right has been upheld to apply

against state intrusion through the Fourteenth Amendment.[1]  *McDonald v. Chicago*, 561 U.S. 742, 748-91, 805-58 (2010).

{¶ 10}  Parallel to the U.S. Constitution, the Ohio Constitution provides that:

> The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power.

Ohio Constitution, Article I, Section 4.  As such, the Ohio Constitution provides its citizens the right to bear arms for their defense and security unconnected to military or militia service.

{¶ 11}  But however expressed, the right to bear arms is not unlimited.  In *Heller*, the Supreme Court said:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. *See, e.g.*, [*United States v. Sheldon*, in 5 Transactions of the Supreme Court of the Territory of Michigan 337, 346 (W. Blume ed. 1940)]; [W. Rawle, *A View of the Constitution of the United States of America* 122,] 123 [(1825)]; [J. Pomeroy, *An Introduction to the Constitutional Law of the United States* § 239, pp. 152-153 (1868)]; [B. Abbott, *Judge and Jury: A Popular Explanation of the Leading Topics in the Law of the Land* 333 (1880)]. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. *See, e.g.*, *State v. Chandler*, 5 La. Ann. [489,] 489-490 [(1850)]; *Nunn v. State*, 1 Ga. [243,] 251 [(1846)]; *see generally* [2 J. Kent, Commentaries on American Law *340, n 2 (O. Holmes ed., 12th ed. 1873)]; The American Students' Blackstone 84, n 11 (G. Chase ed. 1884). Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in

---

[1] Even among the five-member majority, there is a diversity of opinions on how it applies. *Compare McDonald v. Chicago*, 561 U.S. 742, 748-91 (2010) (Justices Alito, Roberts, Scalia, and Kennedy writing that the right applies against the states through the Due Process Clause of the Fourteenth Amendment) *with id.* at 805-58 (Justice Thomas writing that the right should apply against the states through the Privileges and Immunities Clause of the Fourteenth Amendment).

> sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.[FN26]
>
> [FN26]   We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.

*Heller* at 626-27, fn. 26.

{¶ 12} Ohio's Constitutional right has also been held to be subject to considerable limitation and regulation:

> [T]he right "enjoins a duty in execution of which that right is to be exercised. If [a person] employs those arms which he ought to wield for the safety and protection of his country, his person and his property, to the annoyance and terror and danger of its citizens, his acts find no vindication in the bill of rights. That guarantee was never intended as a warrant for vicious persons to carry weapons with which to terrorize others. Going armed with unusual and dangerous weapons to the terror of the people is an offense at common law. A man may carry a gun for any lawful purpose, for business or amusement, but he cannot go about with that or any other dangerous weapon to terrify and alarm a peaceful people.

*Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, ¶ 8, quoting *State v. Hogan*, 63 Ohio St. 202, 218-19 (1900); *see also Arnold v. Cleveland*, 67 Ohio St.3d 35 (1993), paragraph two of the syllabus.

{¶ 13} Here, Smith was charged with violating R.C. 2923.16(B), alleged to have "knowingly transport[ed] or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."  The basis for the crime is apparent from its language and consistent with other parts of the statute and other statutes when considered in pari materia.  R.C. 2923.16(G)(1) and 2923.12(D)(1) and (2) together create an exception for the possession of loaded guns, *other than handguns*, in vehicles when the circumstances are such that "would justify a prudent person in going armed."  R.C. 2923.12(D)(1) and (2)  Another section, R.C. 2923.16(K)(5), defines "unloaded" to permit possessing a gun (even a handgun) in a car as long as the loaded magazines (or, in the case of a revolver, speed loader) are kept in a separate enclosure that closes using some species of fastener.  R.C. 2923.16(K)(5)(a)(ii) and (K)(5)(b).  As such, R.C. 2923.16(B) and related divisions and sections, effectively serve to

prevent and limit a dangerous situation caused by using one hand to access a loaded pistol while the other hand is engaged in driving. The reasonable nature of that objective and the "plainly legitimate sweep" of the narrow prohibition is evident. *Washington v. Glucksberg*, 521 U.S. 702, 740, fn. 7 (1997) (O'Connor, J., concurring); *see also Los Angeles v. Patel*, ___ U.S. ___, 135 S. Ct. 2443, 2451 (2015).

{¶ 14} While there is a right to bear arms for self-defense, no constitution recognizes a right to drive a motor vehicle with a loaded pistol ready at hand for use. Nor does R.C. 2923.16(B) completely prohibit that act in all cases because the prohibition in division (B) does not apply to persons who have obtained a concealed handgun license. R.C. 2923.16(F)(5); R.C. 109.69(B)(3). R.C. 2923.16(B) is not a complete prohibition of even the narrow course of conduct it addresses and it does not facially prohibit the exercise of any constitutional right. *See Klein* at ¶ 2, in passim (reversing a holding that R.C. 2923.12 and 2923.16(B) and (C) were unconstitutional).

{¶ 15} But Smith argues that R.C. 2923.16(B) is unconstitutional as applied to him. He argues that the sleeper area of his truck is also a home, that *Heller* recognized a constitutional right to possess a loaded handgun in defense of one's home, and so, by forbidding the possession of a loaded handgun in his truck, Ohio's laws are unconstitutional as applied to him. *Heller* recognized that:

> [T]he inherent right of self-defense has been central to the Second Amendment right. The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose. The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," 478 F.3d at 400, would fail constitutional muster.

*Heller* at 628-29. But Smith's case differs from *Heller*, not meriting exception.

{¶ 16} First, the *Heller* plaintiff had been entirely prohibited from registering or carrying a handgun.[2] Smith was not prohibited by Ohio law from defending his truck, even

---

[2] The challenged law in *Heller* prohibited carrying an unregistered handgun and also made it impossible to register a handgun. *Heller* at 574-75.

with a handgun. *Heller* at 574-75. Smith could have had a loaded handgun in his truck and accessible if he had obtained a concealed carry license in Ohio or in any other state. R.C. 2923.16(F)(5); R.C. 109.69(B)(3). Even without a license, Ohio law would have permitted Smith to keep his handgun accessible in his vehicle, unloaded, but with a loaded clip nearby in a separate fastened container. R.C. 2923.16(K)(5)(a)(ii) and (K)(5)(b). Smith also could have kept the loaded handgun in a locker not accessible from inside of the truck. R.C. 2923.16(B). Or he could have chosen a weapon that requires two hands to wield (such as a shotgun) for defense of his truck. R.C. 2923.16(G)(1); R.C. 2923.12(D)(1) and (2). Exercising any of these options would have not subjected him to criminal prosecution.

{¶ 17} And the fact that Smith sleeps in his truck does not transform the motor vehicle into a home—an immobile homestead where family and property reside, as envisioned in *Heller* at 628-29. The fact that Smith sometimes sleeps in the truck does not change its character as a motor vehicle. Combining the carrying of a loaded weapon in a motor vehicle in the manner Smith did more easily subjects the public to drive-by shootings, mobile gun fights, and unacceptable risks to innocent bystanders and members of law enforcement. The Ohio legislature has evinced a clear intent to limit the use of a one-handed weapon while driving. The fact that a person can sleep in a vehicle does not alter the nature or validity of that concern.

{¶ 18} We recognize that the "castle doctrine" applies to vehicles and that the Ohio Revised Code treats vehicles as "occupied structures" for the purpose of protecting their occupants from crimes such as burglary and aggravated arson. R.C. 2901.09; R.C. 2901.05(D)(3) and (4); R.C. 2909.01(C); R.C. 2909.02(A)(2); R.C. 2911.12(C). But those laws do not either expressly or impliedly imbue rights for those intended to be protected, due to motor vehicles' inherent mobility.

{¶ 19} In *California v. Carney*, the United States Supreme Court explained (in the context of exceptions to the Fourth Amendment warrant requirement) that the easy mobility of vehicles presents special law enforcement concerns that are not muted by the fact that the vehicle in question may also be suitable as a residence. *California v. Carney*, 471 U.S. 386, 393-94 (1985). Of specific relevance, the Court explained:

> In our increasingly mobile society, many vehicles used for
> transportation can be and are being used not only for

> transportation but for shelter, *i.e.*, as a "home" or "residence."
> * * *.
>
> Our application of the [law] has never turned on the other uses to which a vehicle might be put. [It] has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation.

*Id.* Applying that reasoning in this case, an in-service truck like Smith's differs from a standard "brick-and-mortar" home or even from one that once may have been mobile but now is now clearly immobile, evidenced by, for example, being elevated on blocks or having a connection to utilities. *Id.* at 394, fn. 3. This distinction is useful to differentiating a vehicle from a home within the application of *Heller*. *Heller* at 628-29. We thus find in applying *Heller* that Smith's truck was a motor vehicle and not a home and that the R.C. 2923.16(B) is not unconstitutional as applied to him.

{¶ 20} Because Smith's prosecution under R.C. 2923.16(B) does not violate the holding of *Heller* and because Smith had multiple legal options by which to defend his truck with a firearm in Ohio (even using a handgun), we hold that R.C. 2923.16(B) is not unconstitutional on its face or as applied to Smith. *See Patel* at 2451 (recognizing that a statute is facially unconstitutional when it is "unconstitutional in all of its applications"). Smith's sole assignment of error is overruled.

## IV.  CONCLUSION

{¶ 21} R.C. 2923.16(B) does not violate the right to bear arms set forth in the Ohio or federal constitutions either facially or as applied to Smith. The statutory scheme provides numerous legal avenues by which people in Ohio can effectively defend a motor vehicle with a firearm. A mobile vehicle operable on public roads is not a home and using or carrying a handgun outside of state regulations governing their use in such a vehicle is not constitutionally protected according to *Heller*. Smith's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.

———————————