[Cite as *State v. Philpotts*, 2019-Ohio-2911.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                      No. 107374

v. :

DELVONTE PHILPOTTS, :

    Defendant-Appellant. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 18, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-619945-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut and Christopher D. Schroeder, Assistant Prosecuting Attorneys, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, Robert Blanshard McCaleb, Assistant Public Defender, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Delvonte Philpotts appeals from his conviction of having weapons while under disability. R.C. 2923.13(A)(2) prohibits a person under indictment for a felony offense of violence from acquiring, having, carrying, or using any firearm.

Philpotts was found to have a weapon while under indictment for rape. Although the rape charge against Philpotts was eventually dismissed by the state, Philpotts was prosecuted and convicted for the weapons-while-under-disability offense pursuant to R.C. 2923.13(A)(2). On appeal, he raises three assignments of error for our review:

> 1. Automatic criminalization of the possession of firearms by indictees violates the Second Amendment on its face.
>
> 2. Automatic criminalization of the possession of firearms by indictees violates the Second Amendment as applied.
>
> 3. Automatic criminalization of the possession of firearms by indictees violates the right to procedural due process, both on its face and as applied.

{¶ 2} Upon review, we conclude R.C. 2923.13(A)(2) to be constitutional on its face and as applied to Philpotts. In addition, we determine the statute does not violate the Due Process Clause. Finding no merit to his constitutional claims, we affirm the judgment of the trial court.

**Background**

{¶ 3} On March 10, 2017, Philpotts was indicted by the grand jury for rape, kidnapping, and assault. The rape and kidnapping counts were accompanied with one- and three-year firearm specifications. On March 15, 2017, Philpotts appeared for arraignment and pleaded not guilty. The court subsequently set a bond for $25,000, and as a condition of his bond, he was subject to GPS electronic home detention monitoring. On April 17, 2017, Philpotts posted the bond and was released from the county jail.

{¶ 4} Three months later, the Cleveland Police Department's Gang Impact Unit discovered that, while out on bond, Philpotts posted pictures of himself on his social media page showing him standing outside of his home with a handgun; his GPS home monitoring ankle bracelet was visible in some of the pictures, indicating the pictures were taken while he was out on bond.

{¶ 5} Based on the discovery, the police prepared a warrant to search his home. During the search, the police found an operable Taurus PT111 Pro 9 mm handgun with ammunition — the same gun displayed in his social media pictures. Philpotts subsequently admitted to the police that he possessed the firearm discovered by the police.

{¶ 6} On August 4, 2017, Philpotts was indicted by the grand jury for having a weapon while under a disability pursuant to R.C. 2923.13(A)(2). Subsequently, on November 27, 2017, the state dismissed the rape case without prejudice.

{¶ 7} Thereafter, on January 3, 2018, Philpotts moved to dismiss the indictment in the weapons-while-under-disability case, arguing R.C. 2923.13(A)(2) was unconstitutional. On March 14, 2018, the trial court held a hearing on the motion. On April 19, 2018, the court denied the motion.

{¶ 8} The record also reflects that, sometime after the March 14, 2018 hearing, Philpotts was arrested for having a loaded handgun in a vehicle, in violation of R.C. 2923.16 ("Improperly handling firearms in a motor vehicle"). Philpotts subsequently pleaded no contest in the weapons-while-under-disability case but pleaded guilty to the charge of improperly handling firearms in a motor vehicle. The

trial court sentenced him to three years of community control sanctions for his convictions in these two cases. Philpotts appeals from his conviction in the weapons-while-under-disability case only.

{¶ 9} We review de novo a trial court's decision concerning a defendant's motion to dismiss an indictment based on a constitutional challenge to the statute under which the defendant is indicted. *State v. Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, ¶ 5 (4th Dist.)

{¶ 10} On appeal, Philpotts argues R.C. 2923.13(A)(2)'s automatic criminalization of possession of firearms by one who is under indictment violates the Second Amendment to the United States Constitution and is unconstitutional on its face and as applied to him. He argues the statute violates the Second Amendment to the United States Constitution as that amendment was interpreted by the United States Supreme Court in the landmark decision *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), as well as Article I, Section 4 of the Ohio Constitution.

**The Second Amendment and *District of Columbia v. Heller***

{¶ 11} The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Historically, legal scholars debated whether the Second Amendment recognizes an individual's right to keep and bear arms beyond the goal of guaranteeing the availability of a citizen militia for the security of the State. *See Heller* in passim and *United States v. Miller*, 307 U.S.

174, 176-183, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). In *Heller*, the United States Supreme Court interpreted the Second Amendment to be conferring a right to keep and bear arms regardless of whether or not one is a member of an organized militia. Applying the Second Amendment, the court struck down a law in the District of Columbia that banned any handgun possession. Subsequently, in *McDonald v. Chicago*, 561 U.S. 742, 750, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), the court extended *Heller* to the states, holding that the Second Amendment right to keep and bear arms is applicable to the states by virtue of the Fourteenth Amendment.

{¶ 12} Long before *Heller* and *McDonald*, Ohio courts have recognized the right to bear arms under the Ohio Constitution. Section 4, Article I of the Ohio Constitution states: "The people have the right to bear arms for their defense and security * * *." The provision has been found to confer upon the people of Ohio the fundamental right to bear arms. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 46, 616 N.E.2d 163 (1993). *See also State v. Smith*, 10th Dist. Franklin No. 18AP-124, 2018-Ohio-4297, ¶ 10 (the Ohio Constitution expressly provides its citizens the right to bear arms for their defense and security unrelated to militia service).

{¶ 13} Thus, we review the constitutionality of R.C. 2923.13(A)(2) with the understanding that "[t]he right to keep and bear arms is a fundamental right enshrined in federal and state constitutional law." *State v. Robinson*, 2015-Ohio-4649, 48 N.E.3d 1030, ¶ 11 (12th Dist.).

**R.C. 2923.13: Weapons-While-Under-Disability Statute**

**{¶ 14}** R.C. 2923.13 was enacted in 1972 as part of a bill that largely revamped Ohio's existing substantive criminal code. *State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138, ¶ 16. It enumerates several disability conditions, and a violation of the statute is a third-degree felony. The statute states:

> (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> (1) The person is a fugitive from justice.
>
> (2) The person is *under indictment for* or has been convicted of *any felony offense of violence* or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
>
> (3) The person is *under indictment* for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
>
> (4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic.
>
> (5) The person is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed to a mental institution, has been found by a court to be a mentally ill person subject to court order, or is an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

(Emphasis added.)

**{¶ 15}** Philpotts challenges both section (A)(2) and (A)(3) of the statute that prohibit a person under indictment for a felony offense of violence or felony drug offense from possessing firearms. As an initial matter, we note Philpotts was charged and convicted under R.C. 2923.13(A)(2) only, the underlying offense being rape, a felony offense of violence. It is well established that "[a] party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *Cty. Court of Ulster Cty. v. Allen*, 442 U.S. 140, 154-155, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). *See also Cleveland v. Berger*, 91 Ohio App.3d 102, 631 N.E.2d 1085 (8th Dist.1993) ("a person has standing to challenge only the constitutionality of rules and regulations that affected his interest and those rules and regulations applied to him"). As such, Philpotts does not have standing to challenge the constitutionality of R.C. 2923.13(A)(3), the section regarding the disability predicated upon felony drug offenses. Consequently, we only address the constitutionality of R.C. 2923.13(A)(2), which prohibits a person from acquiring, having, carrying, or using any firearm while under indictment for a felony offense of violence.

**Presumption of Constitutionality**

**{¶ 16}** When considering the constitutionality of a statute, we bear in mind that statutes enjoy a strong presumption of constitutionality. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 36, citing *State v. Thompkins*, 75 Ohio St.3d 558, 560, 1996-Ohio-264, 664 N.E.2d 926, and *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 418-419, 633 N.E.2d 504 (1994). The party challenging the

constitutionality of a statute assumes the burden of proving the statute's unconstitutionality beyond a reasonable doubt. *Id.* "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." S*tate ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus.

**Facial and As-Applied Challenges**

{¶ 17} A party may challenge a statute as unconstitutional either on its face or as applied to a particular set of facts. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17. In a facial challenge, the party challenging a statute must demonstrate that there is no set of facts under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In an as-applied challenge, the challenger claims the application of the statute in the particular context in which he or she has acted is unconstitutional. *Lowe* at ¶ 17. Here, Philpotts argues R.C. 2923.13(A)(2) is unconstitutional both facially and as applied to him.

**Whether R.C. 2923.13(A)(2) Is Unconstitutional on Its Face**

{¶ 18} We address Philpotts's facial challenge first. He claims R.C. 2923.13(A)(2) is unconstitutional on its face because it violates an individual's

right under the Second Amendment as construed by *Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637.

### a. The Right of Firearm Ownership Is Not Absolute Under *Heller*

{¶ 19} Our analysis begins with a recognition that *Heller* does not confer an absolute right to own arms under the Second Amendment. The *Heller* court itself cautioned that the right secured by the Second Amendment is not unlimited. *Heller* at paragraph two of the syllabus. "[T]he right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. This also has always been the view held by the courts in Ohio when interpreting Article I, Section 4 of the Ohio Constitution. *See Arnold,* 67 Ohio St.3d 35, 616 N.E.2d 163 (the right to bear arms conferred under Section 4, Article I of the Ohio Constitution is to allow a person to possess certain arms "for defense of self and property" and "is not absolute").

{¶ 20} *Heller* recognizes that an individual's right under the Second Amendment is qualified and the government retains an ability to regulate the gun ownership of those who pose a risk to public safety. The Court cautioned that its opinion "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller* at 626-627. Furthermore, the Court specifically noted that "these presumptively lawful regulatory measures [serve] only as examples; our list does not purport to be

exhaustive." *Id.* at 627, fn. 26. In both *Heller* and *McDonald,* 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894, the gun regulations struck down by the high court banned *any* ownership of certain firearms regardless of an individual's potential risk to public safety such as those identified by *Heller.*

{¶ 21} Citing *Heller's* reference to "long-standing prohibitions," Philpotts argues that, unlike the time-honored prohibitions on the possession of weapons by convicted felons, Ohio's ban on possession of firearms by one who is under indictment is hardly "longstanding." He points out that Ohio, Washington, and Hawaii are the only three states in the country that criminalize the possession of firearms by one who is under indictment.

{¶ 22} Although *Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637, did not fully explore the scope of limitations on the Second Amendment right, federal court decisions subsequent to *Heller* have concluded that the Second Amendment does not prohibit the government from criminalizing a "non-law-abiding" individual's possession of a weapon. *Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, at ¶ 14. These courts have considered the Second Amendment's core protection under *Heller* to be the right of self-defense by "law-abiding, responsible citizens." *Id.*, citing *United States v. Carpio-Leon*, 701 F.3d 974, 979 (4th Cir.2012).

{¶ 23} Being under indictment arguably places a person outside of the "law-abiding" class identified in *Heller.* Before *Heller*, the Supreme Court of Ohio, in *State v. Taniguchi*, 74 Ohio St.3d 154, 1995-Ohio-163, 656 N.E.2d 1286, considered a defendant's claim that his conviction under R.C. 2923.13(A)(2) should have been

precluded because his indictment for the rape offense, which was the basis of the charge of weapons-while-under-disability, was subsequently dismissed. In rejecting the claim, the Supreme Court of Ohio reasoned that "[i]t is basic hornbook law that the state under its police powers may impose restrictions on *who* may possess firearms." (Emphasis added.) Although *Taniguchi* predated *Heller*, the Supreme Court of Ohio recently affirmed the notion that the court defers to the General Assembly for risk assessment regarding the potential danger posed by various categories of individuals. *Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138. Although *Carnes* involves a different aspect of R.C. 2923.13(A)(2) — regarding the disability of a prior juvenile adjudication of delinquency for committing an offense that, if committed by an adult, would have been a felony offense of violence — the court's analysis of the statute is instructive. In *Carnes*, appellant argued that his juvenile adjudication involved a proceeding where he was uncounseled and did not have a right to a jury trial and other protections and, therefore, using it as a predicate for criminal conduct under R.C. 2923.13(A)(2) violated due process. Citing *Taniguchi*, the Supreme Court of Ohio rejected the claim. It stated:

> "It is basic hornbook law that the state under its police powers may impose restrictions on who may possess firearms." *State v. Taniguchi*, 74 Ohio St.3d 154, 157, 656 N.E.2d 1286 (1995). In crafting R.C. 2923.13, the General Assembly set forth several broad categories of disabling conditions as an element of the crime; notably, "a legal disability can arise from far less than a jury-eligible criminal conviction." [*State v. Barfield*, 2017-Ohio-8243, 87 N.E.3d 233, ¶ 8 (1st Dist.) at ¶ 10.] For example, a person under indictment for any felony offense of violence or certain felony drug offenses is not permitted to carry a firearm. R.C. 2923.13(A)(2) and (3). And the mere fact of such an indictment—regardless of whether a trial is held or a conviction is

> subsequently obtained—is sufficient to create a disability; a conviction under R.C. 2923.13(A)(2) or (3) may stand even "when there is an acquittal on, or dismissal of, the indictment which had formed the basis for the charge of having a weapon while under disability." *Taniguchi* at syllabus.

*Carnes* at ¶ 11.

{¶ 24} With approval, the court cited *Taniguchi's* analysis of the disabling condition involving persons under indictment for felony offenses of violence or drug offenses. The court in addition reasoned that R.C. 2923.13(A)(2) represents the risk-assessment determination and policy decision made by the legislature that allowing weapons in the hands of certain individuals poses an increased risk to public safety. *Carnes* at ¶ 16-17. Although the court in *Carnes* was addressing the disability regarding the class of individuals who had prior juvenile adjudications, its analysis reflects a deference afforded to the legislative body's risk assessment as to who poses a potential safety risk. In accordance with *Taniguchi* and *Carnes*, we keep this deference in mind as we review Philpotts's constitutional claim.

### b. Intermediate Scrutiny

{¶ 25} Having determined that the right of firearm ownership is not absolute under *Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637, and that the risk assessment by the legislature should be accorded a degree of deference, we note that the *Heller* court did not set forth the level of scrutiny to be applied to laws restricting the right to bear arms under the Second Amendment. The *Heller* court only decided that the lesser levels of scrutiny such as the "rational basis" or "interest-balancing" test were inappropriate. *Heller* at 634-635. Subsequent to *Heller*, courts in Ohio

have applied the intermediate level scrutiny to gun-regulating statutes. *See* e.g., *State v. Weber*, 12th Dist. Clermont No. CA2018-06-040, 2019-Ohio-916 (R.C. 2923.15 "Using weapons while intoxicated"); *State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio- 1268 (R.C. 2923.16 "Improperly handling firearms in a motor vehicle"); *State v. Campbell*, 1st Dist. Hamilton No. C-120871, 2013-Ohio-5612 (R.C. 2923.12 ("Carrying concealed weapons")); and *Wheatley*, 2018-Ohio-464, 94 N.E.3d 578 (R.C. 2923.13 ("Having weapons while under disability")).

{¶ 26} "Intermediate scrutiny does not demand that the challenged law 'be the least intrusive means of achieving the relevant governmental objective, or that there be no burden whatsoever on the individual right in question.'" *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir.2011). Rather, under an intermediate level of scrutiny, we examine the statute to determine if the statute (1) is narrowly tailored to serve a significant government interest, and (2) leaves open alternative means of exercising the right. *Wheatley* at ¶ 17, citing *Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). *See also Henderson* at ¶ 52.

### c. Application of Intermediate Scrutiny to R.C. 2923.13(A)(2)

{¶ 27} "No one seriously disputes that the state possesses a strong interest in maintaining public safety and preventing gun violence." *Wheatley* at ¶ 21, citing *Tyler v. Hillsdale Cty. Sheriff's Dept.*, 837 F.3d 678, 693 (6th Cir.2016) (stating "protecting the community from crime" is a "compelling governmental interest"). The only question for us to resolve here is whether the regulation embodied in

R.C. 2923.13(A)(2) is "narrowly tailored" to serve the significant government interest of preventing gun violence.

{¶ 28} Under the statute, the restriction on gun ownership only applies to those under indictment for a felony offense of *violence*,[1] reflecting the restriction is appropriately fashioned to minimize the potential risk of guns in the hands of individuals that may use firearms to facilitate conduct of violence. Furthermore, the statute uses the present tense in describing the disabling condition ("[t]he person is under indictment"), indicating the restriction is temporary and only exists during the time the person is under indictment. The disability ends once the person is no longer under indictment.[2] As such, we find the statute's temporary restriction on gun ownership by one who is currently under indictment for a felony offense of violence narrowly tailored to carry out a significant, in fact, compelling government interest.

{¶ 29} Furthermore, the statute leaves open alternative means of exercising one's right under the Second Amendment. In conjunction with the weapons-while-under-disability statute, Ohio's legislature created a process whereby a person may

---

[1] The state represented in its brief that among the 196 sections in the Revised Code defining nondrug related criminal offenses, only 35 sections involve offenses of violence to which R.C. 2923.13(A)(2) applies.

[2] In Philpotts's case, his disability was removed on November 27, 2017, when the rape charge was dismissed by the state without prejudice. He was under the disability only for a total of eight months. When he was arrested for improperly handling a firearm in a motor vehicle in April 2018, he was no longer under the disability and the state did not charge him under R.C. 2923.13(A)(2).

seek relief from a disability.  Under R.C. 2923.14 ("Relief from disability"), a person who is under a disability may apply to the common pleas court for a judicial review of the disability.   Thus, while R.C. 2923.13 creates an assumption that gun possession by a person who has been indicted for an offense of violence poses a potential risk to public safety, R.C. 2923.14 allows such a person to rebut the presumption and show he or she is a "law-abiding citizen."  Under R.C. 2923.14(D), the court is required to hold a hearing and may grant relief if the person under indictment has been released on bail or recognizance and can show he or she "has led a law-abiding life since discharge or release, and appears likely to continue to do so."   R.C. 2923.14(D)(1)-(2).[3]   Whereas the statute embodies a generalized risk assessment by the General Assembly, the hearing available under R.C. 2923.14 allows the court to make an individualized assessment as to an individual's potential risk.

---

[3] R.C. 2923.14(D) provides:
(D) Upon hearing, the court may grant the applicant relief pursuant to this section, if all of the following apply:
(1) One of the following applies:
(a) If the disability is based upon an indictment, a conviction, or an adjudication, the applicant has been fully discharged from imprisonment, community control, post-release control, and parole, or, if the applicant is under indictment, has been released on bail or recognizance.
(b) If the disability is based upon a factor other than an indictment, a conviction, or an adjudication, that factor no longer is applicable to the applicant.
(2) The applicant has led a *law-abiding* life since discharge or release, and appears likely to continue to do so.
(3) The applicant is not otherwise prohibited by law from acquiring, having, or using firearms.

(Emphasis added.)

{¶ 30} Thus, applying the intermediate level of scrutiny, our review shows R.C. 2923.13(A)(2) is narrowly tailored to serve a significant government interest and also leaves open alternative means of exercising the right to bear arms granted in the Constitution. Accordingly, the statute is constitutional on its face.

{¶ 31} Our decision is consistent with other courts in Ohio called upon to review the constitutionality of various gun-regulating statutes post *Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637. The courts have invariably found the challenged gun legislation passing constitutional muster. S*tate v. Weber*, 12th Dist. Clermont No. CA2018-06-040, 2019-Ohio-916, (R.C. 2923.15(A), prohibiting carrying a firearm while intoxicated); *Wheatley*, 2018-Ohio-464, 94 N.E.3d 578 (R.C. 2923.13(A)(4), prohibiting a person who is drug dependent from having a firearm); *State v. Smith*, 10th Dist. Franklin No. 18AP-124, 2018-Ohio-4297 (R.C. 2923.16(B), prohibiting having a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the driver or a passenger without leaving the vehicle); *State v. Glover*, 2015-Ohio-2751, 34 N.E.3d 1000 (9th Dist.) (R.C. 2923.12(A)(2), prohibiting the carrying of a concealed handgun); *State v. Shover*, 2014-Ohio-373, 8 N.E.3d 358 (9th Dist.) (also concerning the constitutionality of R.C. 2923.16(B)); *State v. Beyer*, 5th Dist. Licking No. 12-CA-27, 2012-Ohio-4578 (R.C. 2923.15, prohibiting carrying firearms while intoxicated); and *Henderson*, 11th Dist. Portage No. 2010-P-0046 (also concerning R.C. 2923.16(B)).

### d. Appellant's Argument

{¶ 32} Philpotts argues that the prohibition of gun ownership while one is under indictment infringes on the Second Amendment right because it is "widely acknowledged" that the grand jury system is deeply flawed. He claims the system provides a person under the grand jury proceeding very little procedural safeguards, citing the inapplicability of the rules of evidence, the absence of the right of confrontation, and the lack of obligation by the prosecutor to disclose exculpatory evidence. Philpotts also argues the grand jury has become little more than "a tool of the Executive," and therefore, a finding of probable cause by the grand jury that a person has committed a felony offense of violence should not be conclusive proof of that person's danger to society. Philpotts contends that a person who is indicted is innocent until proven guilty beyond a reasonable doubt and, therefore, an indictee should be treated as a "law-abiding citizen" as contemplated in *Heller* until convicted. He argues that the assumption that an indictee is more likely to commit crimes than other members of the public, without an individualized determination to that effect, is contradicted by the notion of the presumption of innocence. He cites certain federal statistics from 2004 to show that fewer than two percent of federal felony defendants violated the terms of their pretrial release by committing crimes.

{¶ 33} In addressing Philpotts's argument regarding the grand jury system and the notion of the presumption of innocence, we find the reasoning put forth by the federal court in *United States v. Laurent*, 861 F.Supp.2d 71 (E.D.N.Y.2011)

persuasive. The court in *Laurent* reviewed the constitutionality of 18 U.S.C. 922(n), which similarly restricts the Second Amendment right of those who have been indicted.[4] As a part of its constitutionality analysis, the court in *Laurent* observed that indictment by a grand jury has historically had an effect on an individual's constitutional rights, such as the possibility of being subject to pretrial detention and pretrial release conditions that may infringe upon a person's constitutional rights. The *Laurent* court recognized that reliance on unconvicted conduct — activities that have not been proven beyond a reasonable doubt — to sanction defendants is constitutionally suspect. However, the court pointed out that the notion of the presumption of innocence was designed to ensure a fair trial and afford the accused broad protections in his or her trial and it properly allocates the burden of proof in criminal trials and serves as an admonishment to the jury to base an accused's guilt or innocence solely on the evidence adduced at trial. *Id.* at 96. The court observed that, outside of the context of the criminal trial, however, the presumption of innocence has limited application — for example, the state is permitted to restrict the rights of those who are detained while they await trial. *Id.* The court reasoned

---

[4] 18 U.S.C. 922(n) states: "It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The federal statute is slightly different from R.C. 2923.13(A)(2) in that the former prohibits all individuals indicted with any felony offense from receiving a firearm (that has travelled through interstate commerce) while the latter prohibits individuals indicted with felony offense of violence from possessing a firearm. The difference between possessing and receiving is irrelevant in our discussion here regarding the notion of presumption of innocence.

that, given the narrow scope of rights enjoyed by an indictee outside the context of criminal trials, the federal gun statute 18 U.S.C. 922(n) does not violate the principle of the presumption of innocence. *Id.* While the court acknowledged that "indictees must be treated as far as practicable in a manner similar to the general public," it concluded the presumption of innocence itself is not a sufficient ground to declare 18 U.S.C. 922(n) unconstitutional. *Id.* at 97. Evaluating the statute under intermediate scrutiny, the court upheld the statute as constitutional.

{¶ 34} We find the reasoning in *Laurent* persuasive. The notion of the presumption of innocence is important in our judicial system primarily to ensure an indicted person his or her rights to a fair trial. A person indicted by a grand jury loses certain rights even though such a person is yet to be found guilty beyond all reasonable doubt; a pretrial detention upon indictment, which involves a complete deprivation of freedom, is constitutionally permissible. In other words, the notion of presumption of innocence, which is essential to ensure a fair *trial,* has limited applicability in the context of restrictions of an indictee's rights before trial.

{¶ 35} Philpotts argues that the automatic ban on an indictee's firearm ownership cannot be compared to pretrial detention because a person indicted can be detained only before trial after an adversarial hearing for an individualized determination of risk. Philpotts's argument is unpersuasive. The hearing before pretrial detention is mandatory because a detention involves a *complete* loss of freedom. Firearm ownership, although a fundamental right, is not an absolute right pursuant to the United States Supreme Court's interpretation of the Second

Amendment. Furthermore, an individualized judicial risk assessment is available at an adversarial hearing when requested, as we have discussed above.

{¶ 36} For the same reason, we find unpersuasive Philpotts's claim that because the grand jury system is flawed, an indictment does not always reflect one's danger to society and therefore cannot be a disabling condition. Under the statutory scheme, the finding of probable cause that an individual has committed a felony offense of violence is not conclusive proof of one's dangerousness to society but an inference only, rebuttable by way of an individualized judicial assessment through a hearing upon request.

**Whether R.C. 2923.13(A)(2) Is Unconstitutional as Applied to Appellant**

{¶ 37} Philpotts also argues R.C. 2923.13(A)(2) is unconstitutional as applied to him, claiming that the statute's application "in the particular context in which he has acted" is unconstitutional.

{¶ 38} Philpotts alleges he lived in a crime-ridden and dangerous neighborhood and he needed a weapon to protect his sister and himself. He cites an investigation by Cleveland News 5 that showed that it takes the Cleveland police an average of 17 minutes to respond to priority 1 and 2 calls. He also cites data from the Cleveland Police Department's crime analysis showing the houses around his address were often shot at. Also, there were 220 reports of gunshots fired in his neighborhood since January 2016 as well as 70 reports of felonious assault, nine reports of rape, and 24 reports of robberies.

{¶ 39} While we acknowledge the systemic crime and safety problems in some of our city's neighborhoods and we are not unsympathetic to the frustration of residents living in crime-ridden areas, Philpotts's claim requires precisely the kind of individualized inquiry contemplated by R.C. 2923.14. He, however, never availed himself of the statutory avenue for relief. At no time since his arraignment for the rape charge on March 15, 2017, did he apply for a hearing under R.C. 2923.14.

{¶ 40} Furthermore, notable from the record before us is the manner in which the police were alerted to Philpotts's ownership of firearms. Philpotts was not found to carry a gun while defending himself or his home. Rather, the Cleveland Police Department's Gang Impact Unit discovered that, while he was out on bond in the rape case, he posted several pictures of himself on his social media page. Those pictures were attached to the affidavit for the search warrant that led to the discovery of a gun in Philpotts's house. In one of these social media pictures, which garnered 166 "likes," Philpotts stood outside of his home and pointed a gun directly at the viewer and the picture was accompanied by the caption "Everything dead in dem trenches nigga." Another picture, which had 95 "likes," depicted him in what appeared to be his driveway, and it was accompanied with the caption: "Dey told me 'no weapons' around da house but you kno I'm hard headed af." (Quotation marks sic.) His GPS home monitoring ankle bracelet was visible in several of these pictures, indicating the pictures were taken while he was out on bond.

{¶ 41} The Second Amendment's core protection is the right of citizens to use arms "in defense of hearth and home." *Heller,* 554 U.S. at 635, 128 S.Ct. 2783,

171 L.Ed.2d 637.  Philpotts's puffing and touting of his gun ownership in the social media belies his claim that he needed a gun to protect his family and himself from potential burglars and robbers.  His conduct can hardly be characterized as "in defense of hearth and home," protected under the Second Amendment as construed by *Heller*.  As the state points out, had the police discovered that Philpotts possessed a firearm through an investigation of a reported burglary in his home, during which he used his gun for self-defense, his as-applied claim would be more availing.  However, based on the record before us, we conclude the application of R.C. 2923.13(A)(2) "in the particular context" in which Philpotts acted is constitutional pursuant to *Heller*.   The second assignment of error is without merit.

**Due Process**

{¶ 42} Under the third assignment of error, Philpotts claims automatic criminalization of firearm possession by one who is under indictment violates his procedural due process right. He argues the Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the government from depriving any person of "life, liberty, or property, without due process of law."

{¶ 43} The fundamental requirements of due process are notice and the opportunity to be heard.  *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), and the analysis of a procedural due process claim begins with an examination of whether there exists a liberty interest of which a person has been deprived.  *Wheatley,* 2018-Ohio-464, 94 N.E.3d 578, at ¶ 31, citing *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011).  Here, Philpotts

argues the liberty interest protected by due process includes the Second Amendment right.

{¶ 44} In the criminal context, the requirement of notice concerns "'the accused's right to fair notice of the proscribed conduct.'" *Wheatley* at ¶ 33, quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). This refers to the principle that due process requires criminal statutes to be written clearly so that that individuals are provided with a fair warning that a certain conduct is within the statute's prohibition. *See Wheatley* at ¶ 33, citing *Screws v. United States*, 325 U.S. 91, 103-104, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Connally* at 391 ("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law"), and *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 23 (due process requires law to be written so that the public can adequately inform itself before acting).

{¶ 45} However, as the Fourth District noted in *Wheatley*, preindictment notice has never been required before one can be punished for conduct falling within a criminal statute. *Wheatley* at ¶ 32. Instead, it is well established that "a statute's presence on the books constitute fair warning of the prohibited conduct." *Wheatley* at ¶ 35, citing *Dobbert v. Florida*, 432 U.S. 282, 297, 97 S.Ct. 2290, 53 L.Ed. 344. Ignorance of the law is no defense to criminal prosecution. *Id.* at ¶ 36, citing *Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). Otherwise

"any defendant could free himself from the grasp of the law merely by pleading ignorance." *Id.* quoting *State v. Taylor*, 4th Dist. Meigs No. 377, 1987 Ohio App. LEXIS 8531, at 18 (Aug. 27, 1987), quoting 1 Wharton's Criminal Law, Sec. 77, 374, 376.

{¶ 46} Furthermore, R.C. 2923.13(A)(2), the statute on its face does not require that the defendant know about his disability (i.e., being under indictment) in order for a conviction under the statute. In *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, the Supreme Court of Ohio, addressing a different section of the disability statute, R.C. 2923.13(A)(3) (prohibiting one who is under indictment of having been convicted of a drug offense from having guns), held that the state does not have to prove a culpable mental state for the element that a defendant is under indictment for a drug offense or has been convicted of a drug offense. *Id.* at ¶ 43. In other words, knowledge of a disability, such as knowing one is under indictment for an offense of violence, is not required for a conviction under R.C. 2923.13(A).

{¶ 47} Regardless of whether or not a defendant such as Philpotts should have knowledge of his indictment before criminal liability can attach, Philpotts *had* notice of his indictment because of his arraignment on March 15, 2017. The ankle monitor device he wore as part of the bail condition reflects his knowledge of his indictment. In fact, Philpotts appears to be flaunting his knowledge of his disability in one of the picture captions ("Dey told me 'no weapons' * * *"). His conviction under the statute does not violate the notice requirement under due process.

**{¶ 48}** Regarding the opportunity to be heard as required by due process, as we have discussed in the foregoing, R.C. 2923.14 provides a legislative avenue for relief from disability. Once an application is filed for relief from disability imposed by R.C. 2923.13, the court is required to hold a hearing. *See In re Hensley*, 154 Ohio App.3d 210, 2003-Ohio-4619, 796 N.E.2d 973 (12th Dist.). Because of the relief available under R.C. 2923.14, other districts in Ohio have similarly rejected the defendant's due process argument. *Wheatley,* 2018-Ohio-464, 94 N.E.3d 578 at ¶ 40; and *Robinson*, 2015-Ohio-4649, 48 N.E.3d 1030, at ¶ 16. The third assignment is without merit.

## Conclusion

**{¶ 49}** Ohio's General Assembly acted within the constitutional parameters set forth by the United States Supreme Court in *District of Columbia v. Heller* in prohibiting individuals under indictment for a felony offense of violence from ownership of firearms. R.C. 2923.13(A)(2), which temporarily separates firearms from such individuals, is narrowly tailored to serve a significant governmental interest in curtailing gun violence and it leaves open alternative means of exercising such an individual's Second Amendment right. For all the foregoing reasons, we conclude R.C. 2923.13(A)(2) is constitutional on its face and as applied to Philpotts.

**{¶ 50}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

MARY EILEEN KILBANE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR