[Cite as *State v. Hodges*, 2025-Ohio-5448.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  {48}L-24-1156

      Appellee                                   Trial Court No.  CR0202302653

v.

Arthur Hodges, III                              **DECISION AND JUDGMENT**

      Appellant                                 Decided: December 5, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Samuel E. Gold, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Arthur Hodges, III, appeals from a judgment entered by the

Lucas County Court of Common Pleas following his no contest plea to the offense of

having weapons while under disability. For the reasons that follow, the trial court's

judgment is reversed and the matter is remanded to the trial court for further proceedings.

**Statement of the Case and of the Facts**

{¶ 2} On October 24, 2023, the Lucas County grand jury indicted Hodges on a single count of having weapons while under disability, in violation of R.C. 2923.13(A)(3) and (B), a felony of the third degree. The basis for the disability was a prior felony conviction for trafficking in cocaine, in violation of R.C. 2925.03, a felony of the fourth degree.

{¶ 3} Hodges moved to dismiss the indictment on the theory that R.C. 2923.13(A)(3) was unconstitutional: (1) because it mandates "permanently disarming" felons; and (2) because it disarms felons, like him, who have a drug trafficking conviction. The State opposed the motion, arguing that it is within historical tradition to preclude all convicted felons from possessing firearms.

{¶ 4} The trial court denied the motion to dismiss, finding that R.C. 2923.13(A)(3) is constitutional, both on its face and as applied to Hodges' previous conviction for drug trafficking. Hodges entered a plea of no contest to the indicted charge and was sentenced to a two-year term of community control. He timely filed an appeal.

**Assignment of Error**

{¶ 5} On appeal, Hodges asserts the following assignment of error:

> I.   The trial court erred to the prejudice of the Appellant when denying their motion to dismiss, as the court incorrectly analyzed and applied the decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen* when finding Appellant was not afforded Rights protections the Second Amendment [sic].

2.

**Law and Analysis**

{¶ 6} In his sole assignment of error, Hodges argues that R.C. 2923.13(A)(3) is unconstitutional under the Second Amendment to the United States Constitution and that the trial court erred in denying his motion to dismiss premised on this alleged unconstitutionality. Specifically, Hodges argues that R.C. 2923.13(A)(3) is unconstitutional as applied to non-violent felons like himself under the analytical framework provided the United States Supreme Court in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 142 S.Ct. 2111 (2022).

{¶ 7} We review de novo a trial court's decision on a motion to dismiss an indictment based upon a constitutional challenge to the statute under which the defendant stands indicted. *State v. Wheatley,* 2018-Ohio-464, ¶ 5 (4th Dist.); *State v. Skaggs*, 2024-Ohio-4781, ¶ 10 (5th Dist.); *see also State v. King*, 2024-Ohio-4585, ¶ 14 (8th Dist.)

{¶ 8} "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts." *State v. Lowe*, 2007-Ohio-606, ¶ 17. "When a statute is challenged on its face, the challenger must provide proof beyond a reasonable doubt that no set of circumstances exists under which the statute would be valid." *State v. Eaton*, 2022-Ohio-2432, ¶ 21, citing *Adams v. DeWine*, 2022-Ohio-89, ¶ 27. (Additional citation omitted.) "By contrast, where one challenges a statute on the ground that it is unconstitutional as applied to a particular set of facts, the challenger 'bears the burden of presenting clear and convincing evidence of a presently

3.

existing set of facts that make the statutes unconstitutional and void when applied to those facts.'" *Id.* at ¶ 22, citing *Harrold v. Collier*, 2005-Ohio-5334, ¶ 38. (Additional citation omitted.)

{¶ 9} The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Meanwhile, the challenged statute in this case, R.C. 2923.13(A)(3), provides that:

> [u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse….

{¶ 10} In this case, Hodges's argument is essentially that R.C. 2923.13(A)(3) violates his Second Amendment right to bear arms as a non-violent felon.

{¶ 11} "Like most rights, the right secured by the Second Amendment is not unlimited." *Dist. of Columbia v. Heller*, 128 S.Ct. 2783, 2816 (2008). "From its inception, our nation has regulated the possession, use, and carrying of firearms." *State v. Thacker*, 2024-Ohio-5835, ¶ 10 (1st Dist.). "It is this 'historical tradition,' the [United States] Supreme Court has said, 'that delimits the outer bounds of the right to keep and bear arms.'" *Id.*, quoting *Bruen* at 2127.

4.

**{¶ 12}** In *Bruen,* the United States Supreme Court set forth a two-part test for analyzing Second Amendment challenges. First, a reviewing court must ask whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2126. If it does, then "the Constitution presumptively protects that conduct," and the court must proceed to the second part of the test to determine whether the State has rebutted this presumption by showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

**{¶ 13}** Turning to the first part of the *Bruen* test, we accept the holding from the U.S. Sixth Circuit Court of Appeals in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) that the Second Amendment's text "presumptively protects" a felon's right to "possess a gun." *Id.* at 649; *see also United States v. Duarte*, 137 F.4th 743, 752, 754 (9th Cir. 2025) (where a felon's proposed course of conduct is covered under the plain text of the Second Amendment, the person's status as a felon does not remove him from the ambit of the Second Amendment). Because R.C. 2923.13(A)(3) burdens that right, we move on to the second part of the *Bruen* test, which requires that we determine whether that burden is consistent with our Nation's historical tradition of regulating firearms.

**{¶ 14}** In *Skaggs*, Ohio's Fifth District Court of Appeals concluded that "R.C. 2923.13(A)(3) is consistent with the Nation's historical tradition of firearms regulation." *Skaggs,* 2024-Ohio-4781, at ¶ 31 (5th Dist.). First, the court noted that the statute is "relevantly similar" "to two separate historical traditions: (1) the historical tradition of

5.

restricting the right of habitual drug users, alcoholics, or the mentally ill to possess or carry firearms and (2) the historical tradition of disarming those the legislature deems dangerous." *Skaggs* at ¶ 20; *see also King*, 2024-Ohio-4585, at ¶ 21 (8th Dist.) (numerous federal courts have stated as a general matter that it is proper to restrict firearm usage from individuals categorized as "dangerous"); *Duarte* at 759 (the historical record reveals a host of regulations that disarmed those whom the legislature deemed dangerous).

{¶ 15} Regarding the historical tradition of disarming those the legislature deems dangerous, the *Skaggs* court adopted and incorporated the historical analysis set forth by the Sixth Circuit Court of Appeals in *Williams*. *Skaggs* at ¶ 21. Part of that analysis recognized that under our Nation's historical tradition of firearm regulation, "entire groups" or "classes" who were deemed to be dangerous "could be presumptively disarmed." *Id.* at 656-657; *see also Duarte* at 760 ("[O]ur historical tradition reveals that legislatures were permitted to categorically disarm those they deemed dangerous without having to perform 'an individualized determination of dangerousness as to each person in a class of prohibited persons.'"); *United States v. Nance*, 2023-U.S. Dist. LEXIS 223610, *21 (historical regulations did not require an assessment of the danger posed by an individual in a group targeted for disarmament).

{¶ 16} The *Skaggs* court also observed that "[t]he overwhelming weight of federal authority [has] upheld federal prohibitions on possession of weapons by felons…under *Bruen*." *Id.* at ¶ 24; *see also Duarte* at 752 (so-called "felon-in-possession" laws are

6.

"presumptively constitutional" in their categorical application to individual felons, with no need for felony-by-felony litigation).[1] As noted in *Williams*, the offense of drug trafficking, in particular, "'is a serious offense," and even though it does not always involve an immediate and direct threat of violence against a particular person, it, in fact, "poses a danger to the community.'" *Id.* at 659; *see also United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir.2010) (drug trafficking is a serious offense that, in itself, poses a danger to the community).

{¶ 17} Finally, the court in *Skaggs* looked to the legislative history of R.C. 2923.13. *Id.* at ¶ 26. The Legislative Service Commission notes that accompany the provision provide that "[t]his section is similar to a former prohibition against weapons in the hands of bad risks, including fugitives, certain felons, drug dependent persons, alcoholics, and mental incompetents." Thus, in enacting the statute, the Ohio Legislature grouped drug traffickers in the "bad risk" category.

{¶ 18} Like the court in *Skaggs*, we are persuaded that R.C. 2923.13(A)(3) is consistent with our Nation's historical tradition of firearms regulation and, thus, is constitutional on its face as applied to non-violent drug traffickers generally. As additional support for this conclusion, we note that several United States appellate courts

---

[1] Upon conducting its own historical survey, the Sixth Circuit Court of Appeals in *Williams* determined that governments may use class-based legislation to disarm people it believes are dangerous so long as members of the class have an opportunity to show that they are not, in fact, dangerous. *Williams* at 661-662. The court concluded that this opportunity may lawfully come in the form of an as-applied challenge.

7.

have recently found the parallel federal statute -- 18 U.S.C. 922(g)(1)[2] – both constitutional on its face, and constitutional as-applied to non-violent felons. *See Duarte*, 137 F.4th 743 (9th Cir. 2025); *United States v. Vickers*, 2025 WL 1355433 (10th Cir. May 9, 2025); *Nance* at \*18, fn. 3 (felons, including non-violent felons, are more likely to engage in illegal and violent gun use).

**{¶ 19}** In order to rebut the class-wide presumption of constitutionality, Hodges bears the burden of showing that he, as an individual, is not dangerous. *See Banks* at \*2, citing *Williams* at 662.

**{¶ 20}** To the extent that Hodges actually brings an individualized as-applied challenge, in addition to his more broadly-stated "as-applied" challenge, we recognize that "[t]he dangerousness analysis 'focus[es] on each individual's specific characteristics' and takes into consideration 'the individual's entire criminal record.'" *Banks* at \*2, quoting *Williams* at 657. "This includes 'any evidence of past convictions in the record, as well as other judicially noticeable information.'" *Id.* at 660. "A criminal record containing a conviction for an offense directly involving significant physical harm to one or more persons is very likely to make that defendant dangerous enough to be disarmed under the Second Amendment, while a record involving only convictions that are highly

---

[2] Section 922(g)(1), which is broader than R.C. 2923.13, provides that "It shall be unlawful for any person...who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year…to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

8.

attenuated from such harm is unlikely to render that defendant dangerous." *Banks* at *3, citing *Williams* at 657-60.

{¶ 21} In his appeal, as in his arguments before the trial court, Hodges argues nothing beyond the fact that his disability was predicated on a non-violent drug trafficking offense, which, as we explain above, is sufficient to create a presumption that he is dangerous. In order for Hodges to prove that the Second Amendment protects his right to possess a firearm, and that R.C. 2923.13(A)(3) is unconstitutional as applied to him, he must present clear and convincing evidence that he is no longer dangerous. *See Eaton,* 2022-Ohio-2432, at ¶ 22. [3] Because the parties in this case did not provide sworn testimony or submit any stipulation of facts -- and because the trial court entered no factual findings on the record -- we lack the necessary evidence to consider Hodges's as-applied appeal. Accordingly, we must reverse and remand the matter for factual findings on the record. *See State v. Elam*, 2025-Ohio-1092 (where the trial court held no hearing, the parties did not submit a stipulation of facts, and the trial court entered no findings on the record, the matter was ordered remanded to the trial court for factual findings on the record). Hodges's sole assignment of error is therefore found well-taken.

---

[3] We note that R.C. 2923.14 sets forth an alternative route by which Hodges may regain his rights – namely, by demonstrating to the court that he has completed his sentence and has "led a law-abiding life since discharge or release, and appears likely to continue to do so." R.C. 2923.14(D)(1)(a) and (D)(2).

**Conclusion**

**{¶ 22}** The judgment of the Lucas County Court of Common Pleas is reversed and remanded for further proceedings consistent with this decision. Appellant and appellee are ordered to divide the costs of this appeal pursuant to App.R. 24.

Judgment reversed<br>
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                   _____
                                              JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.                   _____
CONCUR.                                        JUDGE

                                       _____
                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.