[Cite as *State v. Johnson*, 2026-Ohio-727.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250220 |
| | | TRIAL NO. B-2305808 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| LAMOCRES JOHNSON, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 3/4/2026 per order of the court.**

**By:**_____
            **Administrative Judge**

[Cite as *State v. Johnson*, 2026-Ohio-727.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                    :        APPEAL NO.   C-250220
                                           TRIAL NO.    B-2305808
    Plaintiff-Appellee,        :

  vs.                              :        *O P I N I O N*

LAMOCRES JOHNSON,                 :

    Defendant-Appellant.       :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 4, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, *John D. Hill*, *Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David H. Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

.

**ZAYAS, Presiding Judge.**

{¶1} Lamocres Johnson appeals his convictions, following no-contest pleas, for having weapons while under a disability under R.C. 2923.13(A)(3) ("WUD"), carrying a concealed weapon under R.C. 2923.12(A)(2) ("CCW"), and improper handling of firearms in a motor vehicle under R.C. 2923.16(B). In one assignment of error, Johnson argues that the trial court erred by denying his motion to dismiss the charges because the statutory firearm disability for a felony drug offense is based upon the fallacy that the conviction indicates dangerousness, and violates the Second Amendment, both facially and as applied to the facts of this case. For the following reasons, we affirm the judgment of the trial court.

## Factual Background

{¶2} On November 29, 2023, Johnson was found with a loaded firearm concealed on his person after a traffic stop for having an expired license plate. During the stop, the officer also found marijuana and a digital scale. Johnson was indicted for WUD, CCW, and improper handling of firearms in a motor vehicle. Johnson filed a motion to dismiss the indictment and a supplemental motion to dismiss, arguing that the statutes prohibiting him from carrying a firearm, carrying a concealed weapon, and regulating the transportation of a loaded firearm in a motor vehicle unconstitutionally violated his right to bear arms.

{¶3} Johnson was prohibited from having a firearm and not a "qualified adult" for concealed-carry purposes due to a prior felony drug-related conviction in 2014. The felony conviction occurred in Dearborn County, Indiana, for dealing in a narcotic drug, a Class B felony. *See Johnson v. State*, 2016 Ind. App. Unpub. LEXIS

40, *1 (Jan. 22, 2016).[1]  In the same proceeding, Johnson was also convicted of Class B felony conspiracy to commit dealing in a narcotic drug, which was vacated on double-jeopardy grounds, and he was sentenced to 16 years of incarceration.  *Id.* Johnson had been convicted of two Class A misdemeanors for possession of marijuana and paraphernalia.  *Id.* at *3-4.  The details of the offense are as follows.

On October 29, 2013, Johnson and Joshua Comer ("Comer") went to the home of Andrea White ("White") in Covington, Kentucky, near Cincinnati. White was a friend of Johnson but did not know Comer. Johnson introduced Comer to White and asked her if she could drive them to Indiana. Johnson and Comer needed White to drive because she had a valid driver's license. Johnson stated that they needed a ride "[t]o go hit a lick." Tr. p. 465.  The two men offered White twenty dollars and some marijuana, but White was hesitant and declined.  They then upped their offer to forty dollars and some marijuana, and White agreed.

Comer had been in contact with Nick Beetz ("Beetz") who, unbeknownst to Comer, Johnson, or White, was an undercover detective for the Lawrence Police Department.  Beetz had arranged to purchase heroin from Comer that afternoon at 2:30 p.m.  Comer called Beetz at approximately 2:15 p.m. to arrange a location for the transaction, and Beetz chose the parking lot of a fastfood restaurant, which was already under police surveillance.

Beetz arrived at the parking lot in his unmarked car at

---

[1] Johnson appealed that conviction, and the facts were gleaned from his appeal.

approximately 2:22 p.m. While he waited for Comer to arrive, he had several telephone conversations with Comer regarding when he would arrive. Two calls came from Comer's phone number, but a man other than Comer spoke with Beetz. This man told Beetz where he and Comer were in relation to the destination and their estimated time of arrival.

White's vehicle arrived at the chosen destination a few minutes past three o'clock. White was driving, Johnson was in the front passenger seat, and Comer was in the rear seat behind Johnson. Beetz exited his vehicle and approached White's vehicle and handed Comer $600 in cash. Comer then handed Beetz what was later identified to be heroin, wrapped in a piece of paper. During the transaction, Beetz commented that Comer was late. Johnson told Beetz that it was Johnson's fault that they were late. After the transaction was complete, Beetz returned to his vehicle, and White drove away. Shortly thereafter, the police stopped White's car and arrested all three occupants.

*Id.* at *1-3. The appellate court further noted that "the heroin delivered to Beetz was wrapped in paper similar to the marijuana found on Johnson's person when he was arrested." *Id.* at *7.

{¶4} In his motion to dismiss, Johnson argued that R.C. 2929.13 is unconstitutional because there is no direct historical analogue for permanently disarming individuals while they are not incarcerated and do not pose an active threat of harm to another. In his supplemental motion and at the hearing, he argued that the State had to establish that all drug traffickers are dangerous or that Johnson was dangerous under *State v. Thacker*, 2024-Ohio-5835, ¶ 54 (1st Dist.).

{¶5} At the hearing on the motion, Johnson requested the court to consider

his record and the facts of his prior drug conviction, and deem him not dangerous because his crimes did not involve threats or violence. Johnson did not testify or present any evidence. Johnson argued that not all trafficking offenses involve guns and violence, and that his Indiana conviction did not involve threats or violence, just the delivery of narcotics. He insisted that his conduct entailed driving another person who had drugs. Johnson further argued that his car had been broken into on two separate occasions, leading up to the charges. He carried the gun as a necessity to defend himself and did not brandish, wave, or menace anyone with the gun.

{¶6} The State recited Johnson's criminal history, which included a conviction for disorderly conduct in 2008, a fourth-degree misdemeanor, a minor-misdemeanor marijuana possession in 2010, possession of a controlled substance, cocaine, in 2007, a second-degree disorderly conduct in Covington, Kentucky, and a fleeing or evading police in the second degree in Wilder, Kentucky. In 2013, Johnson was charged with Class B dealing in narcotic drugs, Class B felony conspiracy to deal in a narcotic drug, possession of marijuana, and possession of drug paraphernalia. Johnson was convicted in 2014 and was released from prison in 2021. His current indictment stemmed from an incident occurring in November 2023.

{¶7} The court issued a written decision denying the motion to dismiss, "Due to the Defendant's prior criminal record, as read into the record at the February 13, 2025 hearing, the Court finds the Defendant a dangerous individual (especially considering the approximately two-year gap from an eight-year incarceration until these gun charges)."

## *Bruen* Challenge

{¶8} In his sole assignment of error, Johnson contends that the trial court erred by denying his motion to dismiss. He first argues that barring persons with a

6

prior conviction for a felony drug offense, like him, from carrying a firearm is based upon the fallacy that the conviction indicates dangerousness in violation of the Second Amendment.

**{¶9}** "An appellate court reviews the trial court's denial of a motion to dismiss de novo." *State v. Stonewall*, 2025-Ohio-4974, ¶ 7 (1st Dist.).

**{¶10}** The Second Amendment to the United States Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Fourteenth Amendment to the United States Constitution makes the Second Amendment right to keep and bear arms fully applicable to the States. *McDonald v. Chicago*, 561 U.S. 742, 791 (2010).

**{¶11}** "'Like most rights,' though, 'the right secured by the Second Amendment is not unlimited.'" *United States v. Rahimi*, 602 U.S. 680, 690-691 (2024), quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 691, quoting *Heller* at 626. The *Rahimi* Court cautioned that it was "not suggest[ing] that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Rahimi* at 682, citing *Heller* at 626. The Court reaffirmed that prohibitions "on the possession of firearms by 'felons and the mentally ill' . . . are 'presumptively lawful.'" *Id.*, quoting *Heller* at 626, 627, fn. 26.

**{¶12}** When considering whether a firearm regulation is constitutional, courts must apply a two-part test first articulated in *New York Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1 (2022). Courts must first determine whether the "Second Amendment's plain text covers an individual's conduct." *Id.* at 24. If yes, then the "Constitution presumptively protects that conduct." *Id.*

**{¶13}** The second step requires the State to demonstrate the challenged law is justified by affirmatively "demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* The State satisfies its burden by presenting a historical record of permissible firearms law "relevantly similar" to the challenged law, applying "reasoning by analogy[.]" *Bruen* at 28-29.

**{¶14}** The State agreed that the Second Amendment covers the conduct regulated by the statutes Johnson was convicted of violating, so we begin our analysis at step two.

**{¶15}** Numerous courts have applied *Bruen*'s historical-tradition analysis to conclude that "from the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Rahimi*, 602 U.S. at 693; *United States v. Canada*, 123 F.4th 159, 162 (4th Cir. 2024) (the government may constitutionally forbid people who have been found guilty of such [felonies] from continuing to possess firearms); *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) (the "nation's history and tradition demonstrate Congress may disarm individuals they believe are dangerous," and prohibiting persons convicted of a crime punishable by more than a year "is an attempt to do just that.").

**{¶16}** Ohio courts have followed suit. *See, e.g., State v. Skaggs*, 2024-Ohio-4781, ¶ 28 (5th Dist.) (history and tradition "support the legislature's power to disarm those the legislature deems dangerous."); *Thacker*, 2024-Ohio-5835, at ¶ 45 (1st Dist.) ("a legislature may make categorical judgments about who is too dangerous to possess a firearm"); *State v. Hodges*, 2025-Ohio-5448, ¶ 21 (6th Dist.) (the disability based on a nonviolent drug-trafficking offense "is sufficient to create a presumption that [defendant] is dangerous").

{¶17} The *Rahimi* Court held that "the Government offers ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Rahimi* at 693. "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698. "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 700.

{¶18} Johnson contends that R.C. 2923.13(A)(3), which prohibits him from "acquir[ing], hav[ing], carry[ing], or us[ing] any firearm" due to his prior felony conviction for dealing in a narcotic drug is unconstitutional as applied to him because he is not dangerous as his conviction did not involve threats, guns or violence.

{¶19} However, in the present case the trial court did not predicate its determination of dangerousness upon the current conviction. Instead, the court made an express finding that Johnson is currently dangerous. That finding rested upon Johnson's extensive criminal history and the 16-year sentence he received for his conviction of trafficking in heroin. Additionally, after serving eight years, Johnson was released in 2021. Two years later, he was indicted on the current charges.

{¶20} Because our nation's history and tradition "allows the Government to disarm individuals who present a credible threat to the physical safety of others," and the trial court found Johnson to be currently dangerous, R.C. 2923.13 (A)(3) can lawfully be applied to Johnson. *See Rahimi*, 602 U.S. at 700.

{¶21} Johnson also challenges the constitutionality, both facially and as-applied, of the CCW and improper-handling-of-firearms-in-a-motor-vehicle statutes. Johnson was not a "qualified adult" under both statutes due to his prior felony-trafficking conviction. *See* R.C. 2923.111(A)(2)(b) (defining "qualifying adult" as a

person not legally prohibited from possessing a firearm under R.C. 2923.13).

**{¶22}** This court has repeatedly held that both statutes merely restrict the manner in which some people may carry or transport firearms. *See State v. Hall*, 2025-Ohio-1644, ¶ 40 (1st Dist.) (addressing CCW); *State v. Reed*, 2025-Ohio-4708, ¶ 5 (1st Dist.) (addressing CCW); *State v. Baxter*, 2025-Ohio-5722, ¶ 9-10, 12-14 (1st Dist.) (addressing CCW and improper handling); *Stonewall*, 2025-Ohio-4974, at ¶ 24-25, 39 (1st Dist.) (addressing CCW and improper handling). Regulating the manner in which a dangerous individual may carry and transport firearms fits comfortably into our nation's history. *See id.*

**{¶23}** Accordingly, we overrule the assignment of error.

## Conclusion

**{¶24}** Having overruled Johnson's sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**NESTOR** and **MOORE, JJ.** concur.